## CITY OF MUNDAY v. FIRST STATE BANK OF MUNDAY et al.

### No. 1172.

Court of Civil Appeals of Texas. Eastland.

Nov. 24, 1933.

Rehearing Denied Dec. 22, 1933.

See, also, 61 S.W.(2d) 861.

D. J. Brookreson, of Benjamin, and J. S. Kendall, of Munday, for appellant.

M. F. Billingsley, of Munday, for appellees.

HICKMAN, Chief Justice.

This appeal presents the single question of whether a city having a population of less than five thousand inhabitants, and incorporated under the general law, may procure the issuance of a writ of attachment in a suit in which it is plaintiff without filing an attachment bond. The appellant, as plaintiff below, caused a writ of attachment to issue and be levied on property belonging to certain of the appellees, which writ was subsequently quashed by the trial court, upon motion of appellees, on the ground that no bond in attachment was executed by it. The correctness of that ruling is presented for review.

Article 279, R. S. 1925, provides that, before the issuance of any writ of attachment, the plaintiff must execute a bond, conditioned and payable as therein provided. Appellant did not comply with this provision of the statute, and clearly was not entitled to have the writ issued, unless it was exempted from the mandate of this statute by some other article of the statutes. The article relied upon by appellant as affording this exemption is article 2072, R. S. 1925, which reads as follows: "No security for costs shall be required of the State or of any incorporated city or town in any action, suit or proceeding, or of an executor, administrator or guardian appointed by a court of this State in any suit brought by him in his fiduciary character."

Reference to the numbers inclosed in brackets adjacent to the number of this article, under the 1925 revision, discloses that it was placed by the codifiers in the statute in lieu of articles 768, 2054 and 2055, R. S. 1911. These articles, as they appeared in the Revision of 1911, were as follows:

"Art. 768. It shall not be necessary in any action, suit or proceeding in which the city, accepting the provisions of this title, shall be a party, for any bond, undertaking or security to be executed in behalf of the city; but all such actions, suits and proceedings shall be conducted in the same manner as if such bond, undertaking or security had been given, and, for all the purposes of such actions, suits and proceedings, the city shall be liable in the same manner, and to the same extent, as if the bond, undertaking or security in ordinary cases had been duly given and executed.

"Art. 2054. Executors, administrators and guardians appointed by the courts of this state shall not be required to give security for costs in any suit brought by them in their fiduciary character.

"Art. 2055. The state shall not, in any case, be required to give security for costs."

There is no doubt but that, under the provisions of article 768, above copied, a city was not required to execute a bond as a condition for the issuance of an attachment. The terms of that statute were sufficiently broad to exempt a city from giving any character of bond in any proceeding. Athens Telephone Co. v. City of Athens (Tex. Civ. App.) 163 S. W. 371; Smith v. City of Dallas (Tex. Civ. App.) 36 S.W.(2d) 547.

To hold that a city is not now exempted from giving a bond in attachment is to hold that the exemption granted it by article 768, R. S. 1911, was not carried forward in article 2072, R. S. 1925. Had the last-named article not placed cities upon the same basis as guardians, administrators, and executors, it might be reasoned that there was not disclosed a legislative intent to take away the exemption granted in article 768. But since, by the terms of article 2072, a city is granted only such exemptions as are granted to the state and to executors, administrators, and guardians appointed by a court, a holding that a city is exempted by that article from exe-

cuting an attachment bond would be no more justified than a holding that the state or an executor, administrator, or guardian is likewise exempted. It will be noted that the language of article 2072 is practically the same as the language of articles 2054 and 2055, R. S. 1911, above quoted. It could not be contended, we think, that any greater exemption was granted to guardians, administrators, and executors under article 2072, R. S. 1925, than was granted to such persons under the old article 2054. If such representatives are now exempted from giving bonds in attachment proceedings, they were likewise exempted prior to the codification of 1925, for clearly no change has been made in the statute with reference to the exemption to that class of litigants. The inquiry resolves itself into this: Under article 2054, R. S. 1911, were executors, administrators and guardians exempted from executing a bond in attachment? We are referred to no case on the question, and have discovered none directly deciding it. A somewhat analogous question was decided in Reese, Executor, v. Hamilton, 20 Tex. 668. The question there presented was whether an executor was exempted from giving bond in order to obtain a writ of certiorari to a justice's court. By statute he was exempted from giving security for costs, and it was urged that the exemption extended to the bond for certiorari. In disposing of the question Justice Wheeler used this language: "* * * And of course there is no more authority of law for awarding a certiorari, in favor of an executor or administrator, without requiring the party to give bond, than for awarding any extraordinary writ—a sequestration or attachment—in favor of such party, without the bond required by the statute. The Court would not be warranted in making the case of an executor or administrator an exception, by judicial construction, to the peremptory mandate of the statute."

■ It would seem that there should be authorities more directly in point upon this question, but, if so, they have not been discovered. But, independent of authority, it is our view that, in order to exempt a plaintiff from giving a bond as a condition to the issuance of an attachment, some provision should be found other than a mere exemption from giving security for costs. While an attachment bond is conditioned for the payment of costs, the main condition thereof is for the payment of damages to the defendant in the event it is wrongfully issued, and it is our conclusion that the exemption from giving security for costs should not be held to extend to an exemption from giving a bond in attachment.

If we are correct in the foregoing conclusion, then, under the statutes as they existed prior to the codification of 1925, cities were exempted from giving bonds in attachment, but neither the state, guardians, administrators, nor executors were so exempted. There

clearly has been no further exemption extended to the latter, and, since under present article 2072 the exemption now is the same as to all, it follows that such exemption must now be denied to a city incorporated under the general law.

Appellant contends in the next place that the exemption granted it by article 768, R. S. 1911, above quoted, was preserved to it by article 1177, R. S. 1925, which latter article reads as follows: "All powers heretofore granted any city by general law or special charter are hereby preserved to each of said cities, and the power so conferred upon such cities, either by special or general law, is hereby granted to such cities when embraced in and made a part of the charter adopted by such city; and until the charter of such city as the same now exists is amended and adopted, it shall be and remain in full force and effect."

■ This contention is based upon a showing that the city of Munday after its incorporation adopted the provisions of title 22, R. S. 1911 (article 762 et seq.), by an ordinance passed on March 4, 1913, the effect of which was to embody in its charter all the powers granted in that title. That title as it then existed contained article 768, R. S. 1911. It therefore contends that, perforce the provision of article 1177, above quoted, there was preserved to it the rights granted in the old article 768. We cannot adopt this view, because, in our opinion, the provisions of article 1177, R. S. 1925, above quoted, were designed to apply only to home-rule cities. Frankenstein v. Rushmore & Gowdy (Tex. Civ. App.) 217 S. W. 189. The article is a part of the home-rule law as originally enacted in 1913, and appears in R. S. 1925 in the chapter dealing with home-rule cities (article 1165 et seq.). In a recent opinion by the Commission of Appeals in City of Athens v. Evans, 63 S.W.(2d) 379, it was held that the last sentence in article 1174, R. S. 1925, which was also a part of the original home-rule law, was not limited in its application to home-rule cities, but covered and included cities organized under the general law. It was stated in that opinion that all of article 1174, except the last sentence thereof, would apply to home-rule cities only. This distinction seems to have been based upon the difference between the language of the first part of that article and the last sentence thereof. Conceding that the words "any city," as used in article 1177, are as broad as the words "all cities," as used in article 1174, we are still unable to hold that the provisions of article 1177 apply to cities incorporated under the general law. This for the same reason assigned by the commission in the opinion last above referred to for holding that the first part of article 1174 applies only to home-rule cities, the language of the article itself cannot be made applicable to other than home-rule cities. This arti-

cle undertakes to preserve powers to cities "until the charter of such city as the same now exists is amended and adopted." That language cannot be made applicable to the city of Munday, or any other city operating under the general law.

But, if it should be considered that article 1177 applies to all cities alike, appellant would derive no benefit therefrom. The only charter possessed by appellant is the general law relating to cities, towns, and villages. It has no power at all to amend its charter. That power is lodged exclusively in the Legislature. Blessing v. City of Galveston, 42 Tex. 641. If we are correct in the above holding that the provisions of article 768, R. S. 1911, were brought forward in article 2072, R. S. 1925, only to the extent of exempting a city from giving security for costs, and that under the provisions of the last-named article such city is not now exempted from giving bond in attachment, then the Legislature itself has amended the charter of the city of Munday to the extent of repealing a power formerly given it. Article 1177, R. S. 1925, when given its widest application, preserves powers to cities only until their charters are amended. If the charter of the city of Munday has been amended by the Legislature, then article 1177 does not even purport to preserve its original powers. Our conclusion is that article 1177 does not afford any support for appellant's contention.

It follows from what has been written above that it is our opinion that the trial court did not err in quashing the attachment, and, as that is the only question presented, the judgment below will be affirmed.