## CITY OF SHERMAN V. MUNICIPAL GAS COMPANY.

No. 7054. Decided April 19, 1939.
Rehearing overruled June 14, 1939.
(127 S. W., 2d Series, 193.)

*George L. Hamilton,* of Sherman, *Cunningham & Lipscomb,* of Bonham, and *Dan Moody,* of Austin, for plaintiff in error.

The City of Sherman, a home-rule city, incorporated March 6, 1915, under Article 11, section 5, of the Constitution as amended, and Article 1165, R. S., enacted in 1913, was from the date of its incorporation and at all times subsequent thereto, a city incorporated under the general laws of the State of Texas, and Articles 1121 and 1122, R. S. 1925, were applicable to it. Huff v. City of Wichita Falls, 121 Texas 281, 48 S. W.

(2d) 580; Young v. Young, 41 S. W. (2d) 367; Cameron v. City of Waco, 8 S. W. (2d) 250.

*Roy C. Coffee, Marshall Newcomb,* and *Warren J. Collins,* all of Dallas and *Ben H. Powell,* of Austin, for defendant in error.

The City of Sherman is a home-rule city and prior to the amendment of the Constitution providing for home-rule cities, it was incorporated under a special act of the Legislature. It was never incorporated under the general laws of the State, as that phrase is used in Articles 1119, 1121 and 1122, and had no authority to assess the penalties asked for. Texas-Louisiana Power Co. v. City of Farmersville, 67 S. W. (2d) 235; Rachford v. City of Port Neches, 46 S. W. (2d) 1057; 43 C. J. 84.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit was filed by the City of Sherman against Municipal Gas Company, defendant in error, for the collection of statutory penalties provided by Article 1122, R. C. S. 1925, for alleged willful failure and refusal of the company to comply with the requirements of Article 1121, R. C. S. 1925, in the matter of filing reports with the city for the years designated in the pleadings. Upon jury findings favorable to the city judgment was rendered against the company for $80,400.00. Upon appeal the Court of Civil Appeals reversed the trial court's judgment and rendered judgment for the company. 89 S. W. (2d) 436. The writ was granted upon the city's application because of the importance of the question. The following facts will be stated as presenting the primary question involved:

At the time this suit was filed Article 1119 of the Revised Civil Statutes, 1925, provided in part:

"The city council of all cities and towns in this State of over two thousand population, *incorporated under the general laws thereof,* shall have the power to regulate, by ordinance, the rates * * * to be charged by all * * * companies * * * engaged in furnishing * * * gas * * * to the public, and also to prescribe * * * regulations under which such commodities shall be furnished, and * * * to fix penalties to enforce such * * * regulations, * * *." (Italics ours).

The foregoing article is section 1 of an act passed by the Legislature in 1907 (Acts 1907, p. 217), the purpose of which is reflected in the quoted portion of the section. The other

sections pertinent here are section 4, now Article 1121 and section 5, now Article 1122, above referred to. Article 1121 enumerates in detail the requirements imposed upon companies in furnishing public utility commodities to the inhabitants of the class of cities referred to in Article 1119, including the requirement to file detailed reports, "with the mayor of such city." Article 1122 provides the penalties which the company "shall forfeit and pay to such city for refusal to comply with the requirements of Article 1121. Neither the articles referred to nor the act of which they were originally a part, had undergone any enduring substantial change at the hands of the Legislature at the time this suit was filed. The only change (that made by the codifiers) was to substitute for the words "city council" in the opening line of Article 1119 the words "governing body." Art. 1119 R. C. S. 1925.

It is the company's primary contention that the City of Sherman was not at the time this suit was filed a city "incorporated under the general laws" of the State and that it was under no duty to comply with the requirements of Article 1121. Nor is it questioned by the city that if the company's contention is correct the present suit for penalties must fail.

The city contends however "that a law enacted by the Legislature is either a general law on the one hand, or a special, private or local law on the other hand; that a law is general if it applies uniformly to all of a class; that since the city at the time the present suit was filed had been incorporated pursuant to section 5 of Article 11 of the Constitution of the State and the enabling act (Art. 1165, R. C. S. 1925) thereunder, and since both the enabling act and section 5 are general laws, it must follow that the City of Sherman was incorporated under *general* rather than *special* law; that Article 1119 should apply to all cities in the State of over 2000 population except those incorporated by special law, and that "it should be held that home-rule cities come within the application of Article 1119."

We are unable to agree with this contention. The designation, "incorporated under the general laws," used by the Legislature in the act of 1907 as a classification of cities to which applicable, is not applicable to the City of Sherman, which is, and was when the suit was filed, a home-rule city.

It is not controverted that at the time this suit was filed the city had adopted (March 1915) a charter pursuant to the provisions of section 5 of Article XI of the Constitution providing for the incorporation of home-rule cities and the enabling act thereunder, both of which provide in part:

"Cities having more than five thousand inhabitants may by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature. * * *"

■ The classification of cities as to their respective modes of incorporation or organization is pointed out in Corpus Juris in its treatise on "Municipal Corporations," under the sub-title "Mode of Creation." Vol. 43, sec. 26. The section in which the classification is designated, immaterial statements deleted, reads:

" 'Incorporation' is the term used to describe the result of the entire course of legal proceeding whereby a municipality is brought into existence. * * * There are various methods · of incorporation; as in England by royal charter, or by act of parliament; and in the United States by special legislative act, by proceedings and organization under general laws, or by adoping  a home rule or free-holders' charter under constitutional provisions."

It will be noted that the threefold classification manifestly applies in those jurisdictions in which provision is made for the adoption by cities of home-rule charters. Such provision was made in this State in 1912 by the amendment of section 5 of Article XI of the Constitution. Vernon's Anno. Const. Vol. 2, p. 529. Prior to its adoption the mode provided by the Constitution for the incorporation or chartering of cities and towns was that they be "chartered alone by general law," as provided by Section 4 of Article XI of the Constitution (Vernon's Anno. Const. Vol. 1, p. 46) ; or that they "may have their charters granted or amended by special act of the Legislature," as provided by section 5 of the same article prior to its amendment in 1912 (Vernon's Anno. Const. Vol. 1, p. 47).

The classification of cities above referred to will be stated for convenience as follows: (1) those incorporated under the general laws of the State; (2) those incorporated by special law; and (3) those incorporated under home-rule charter. If prior to the adoption of the amendment of 1912, supra, the Legislature in classifying cities as to their respective modes of incorporation, used a twofold classification similar to that shown by classes (1) and (2), supra, and subsequent thereto has used a threefold classification by adding thereto class (3), supra, it should be persuasive that the Legislature does not intend that the phrase used in designating the cities embraced in class

(1) shall designate also the cities embraced in class (3). In other words it is persuasive that the phrases, "incorporated under the general laws," and "incorporated under home-rule charter," designate distinct legislative classifications.

The statutes of the State dealing with the governance of cities, towns and villages are embraced in title 28 of the 1925 revised civil statutes. Such of these as have been enacted subsequent to 1912, examined in the light of the language used to classify cities as to their respective modes of incorporation, disclose that the Legislature at the time they were originally enacted, and subsequently when codified, made use of the three-fold classification above designated, as appears in the following resume of classification made.

Article 1111, enacted as amended in 1932 (42nd Leg. 3d. C. S., p. 96, ch. 32) uses the classifications thus indicated: "All cities and towns including home-rule cities." Article 1124 enacted in 1921 (Acts 1st C. S. 1921, p. 152) in referring to the two classes of charters governing cities after the adoption of home-rule, uses the following classification: "Cities having a special charter or a charter adopted or amended under the provisions of chapter 13 (chapter dealing with home-rule) of this title * * *." Article 1187a, enacted in 1933 (Acts 1933, 43d Leg., p. 774, ch. 231), referring to the three classes of cities, designates them thus: "Any city in this State whether organized and operating under general law or under special charter granted by the Legislature * * * or under charter adopted or amended under section 5 (home-rule section) of Article 11 of the Constitution, * * *." The language used in Article 1187b, enacted in 1935 (Acts 1934, 43d Leg., 2d. C. S. p. 48, ch. 17) in making the same classification is identical with that employed in 1187a. The Legislature in the enactment of Article 1266 uses the following classification: "Any city in this State * * * whether such city was organized by special law, home-rule charter, or general laws of this State, * * *."

■ When the phrase, "incorporated under the general laws," was used in the act of 1907 as a part of the designation showing the class of cities to which its provisions were applicable, the 1912 amendment of section 5 of Article 11 of the Constitution had not been adopted. At that time the act could have had no reference to home-rule cities; but assuming, without deciding, that it should be so construed as to apply its provisions prospectively, it cannot be held, in the light of the classifying designations pointed out, to apply to home-rule cities.

The conclusion reached is further verified by a similar

examination of the statutes embraced in title 28 that were enacted prior to the adoption of the 1912 amendment. The following articles disclose the classifications indicated: Article 1241, enacted in 1895 (Acts 1895, p. 166), "Cities and towns incorporated under the general laws and cities and towns incorporated under special law * * *"; Article 1086, enacted in 1909 (Acts 2d C. S. 1909, p. 402), "Towns, cities and villages incorporated under either general or special law, * * *"; and Article 1108, enacted in 1909 (Acts 1909, p, 159), "Any town or city * * *, which has or may be chartered or organized under the general laws of Texas, or by special act or charter * * *."

That the phrase, "incorporated under the general laws," has no application to home-rule cities was decided in City of Munday v. First State Bank of Munday, (wr. ref.) 66 S. W. (2d) 775. The single question to be determined, as stated by Chief Justice Hickman (now member of Section A of the Commission of Appeals), was "whether a city having a population of less than 5000 inhabitants and incorporated under the general law," might lawfully procure "the issuance of a writ of attachment in a suit in which it is plaintiff without filing an attachment bond." The court in holding that the city was not authorized to do so pointed out that the provisions of a statute (Article 1177, R. C. S. 1925) which "were designed to apply only to home-rule cities," were without application to cities "incorporated under the general law." The decision was held to be correct by this court and the application filed for writ of error was refused.

The city points out in its brief that Article 1119 was held applicable to the City of Brownwood, a home-rule city, in Community Natural Gas Co. v. Natural Gas & Fuel Co., 34 S. W. (2d) 900. That case did not reach this court. An examination of the briefs on file in the original record in the Court of Civil Appeals discloses that the question was not raised. For aught that appears of record the city may theretofore have adopted the provisions of the 1907 act. All parties to the proceedings apparently assumed in the state of the record that it was applicable. Such being the case the Court of Civil Appeals correctly assumed its applicability.

There is nothing in the record to show, nor is it contended, that the City of Sherman either by charter amendment or by ordinance, adopted the provisions of Article 1121 and 1122. It began its municipal existence as a town. When, is not disclosed by the record. In 1873 the town was reorganized and chartered as a city by special legislative act. Laws of Texas,

Vol. 8, p. 891. In 1895 it was again incorporated by special act. Laws of Texas, Vol. 10, p. 1005. It operated under the 1895 charter until March 1915, when it became a home-rule city. It was so operating as a municipality when this suit was filed. It has never been a city incorporated under the general laws within the language of Article 1119.

We agree with the holding of the Court of Civil Appeals that the language of section 2 of the city's charter is not sufficient to embrace the articles of the statute in question and make them a part of the city's organic law. See in this connection Davis v. City of Taylor, 123 Texas 39, 67 S. W. (2d) 1033; City of Munday v. First State Bank of Munday, supra; and Dillon on Municipal Corporations (5th ed.) Vol. 1, sec. 27. We find no necessity for discussing other matters referred to in the opinion of the Court of Civil Appeals and make no holding with respect thereto. Its judgment reversing that of the trial court and rendering judgment in favor of defendant in error, is affirmed.

Opinion adopted by the Supreme Court April 19, 1939.

Rehearing overruled June 14, 1939.