## CITY OF DALLAS v. CRIPPEN et al.
### No. 12464.

United States Court of Appeals
Fifth Circuit.
Dec. 10, 1948.

Rehearing Denied Jan. 10, 1949.

Henry P. Kucera, City Atty., and John C. Ford, Asst. City Atty., both of Dallas Tex., for appellant.

Theron L. Caudle, Asst. Atty. Gen., Geo. A. Stinson, Ellis N. Slack and S. Dee Hanson, Sp. Asst. Attys. Gen., and Webster Atwell, Wm. P. Fonville, and Wm. Cantrell, Jr., Asst. U. S. Attys., all of Dallas, Tex., for appellee.

Before HOLMES, WALLER, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

The decisive question on this appeal is whether the City of Dallas, under its charter, has a valid lien for ad valorem taxes on personal property effective from January the first of each year. Section 194 of said charter creates such a lien, but the court below held void the provision therein that said lien "shall exist from January 1st," saying that it conflicted with Article 1060 of the Revised Civil Statutes of Texas of 1925, which, as construed, makes such lien effective from the date of assessment of the property.

The pertinent facts of this case are not in dispute. All the personal property of the bankrupt (consisting of airplanes, spare motors, tools, machinery, automobiles, office furniture, store fixtures, etc.), against which the City of Dallas assessed and levied taxes for the year 1947, was situated in said City on January 1, 1947; it was in the possession of the bankrupt on that date, and was turned over to the trustee in bankruptcy by the bankrupt at the time of the adjudication, which was on February 26, 1947. Neither the bankrupt nor the trustee returned said property to the City of Dallas for taxation on or before April 1, 1947, as required by Section 189 of the city charter. Therefore, on May 16, 1947, the assessor and tax collector of said City assessed all of said property for taxes, as required by Section 187 of the City charter, which assessment was approved by the City Council on September 23, 1947. Much of this property was subject to mortgages, none of which overlapped, and all of the encumbered property was sold in three separate lots, each to satisfy its own mortgage, under orders of the Bankruptcy Court. The court below held that the City's claim was not secured by a lien and should be classed with the claim for taxes of the United States. The City of Dallas asserts that its taxes are secured by a valid lien which is superior to the mortgage liens and to the unsecured tax-claim of the United States.

A similar contention of the City of Dallas was upheld by this court in the case of In re Brannon, 5 Cir., 62 F.2d 959, reversing 53 F.2d 401, certiorari denied 289 U.S. 742, 53 S.Ct. 692, 77 L.Ed. 1489. In its opinion in that case, this court held that a true general lien for taxes on personalty was given the City by Section 194 of its charter. This lien, it said, required no recording, and was good in bankruptcy. We might rest our decision here on that case but for two reasons: There, no question was raised as to when the lien of the City became effective, since all the taxes were for years prior to the adjudication in bankruptcy except the last year, and probably in that year also the taxes were assessed prior to the adjudication: whereas, in the case before us, bankruptcy intervened between January 1, 1947, the alleged effective date of the lien, and May 16, 1947, when the property in question was assessed for taxes by the City of Dallas. The second reason is that the character of the lien relied on to secure the alleged tax-claim depends upon the law of Texas, and it is necessary for us to reexamine the state law, because our present decision on this point is governed by the latest decision of the highest court of the state, and our prior decision was rendered on January 18, 1933.

An excellent discussion of the general principles applicable to liens under the bankruptcy law is given in the Brannon case, supra. In it the Court pointed out that under Texas law there was no lien on personal property for the state and county taxes prior to seizure, but that, by virtue of Section 194 of the charter of the City of Dallas, such a lien did exist for city taxes from January 1st of each year until all the taxes were paid. We quote from this court's opinion in that case, 62 F.2d at pages 962, 963: "The city taxes have been better cared for by the statutes. Article 1063 gives the cities the benefit of the general tax laws, but article 1060 goes further, providing: 'all taxes shall be a lien upon the property upon which they are assessed.' Section 194 of the charter of the city of Dallas is still more liberal, reading: 'A lien is hereby created on all property, personal and real, in favor of the City of Dallas for all taxes, ad valorem, occupation or otherwise. Said lien shall exist from January 1st in each year until all the taxes are paid. Such lien shall be prior to all other claims and no gift, sale, assignment or transfer of any kind or judicial writ of any kind,

can ever defeat such lien.' We think a true general lien for all city taxes is given the city of Dallas by the language last quoted, which adheres to the property notwithstanding its transfer and which, requiring no record, is good as a lien in bankruptcy. All property of the taxpayer falls under it, so that it is unnecessary to identify that assessed for the particular tax. * * *. We therefore think that the taxes due the city of Dallas have a first and general lien and must be first satisfied."

In the instant case, the City's claim of a lien that became effective as of January 1, 1947, must be upheld if there is no irreconcilable conflict between Section 194 of the Charter and Article 1060 of the Revised Statutes. In other words, unless the earlier statute was impliedly repealed by the later one, the charter provision is still in effect. Repeals by implication are not favored by the courts, and will not be adjudged if any reasonable construction will permit both statutes to stand together. We see no reason why, in the special charter for Dallas, the legislature could not fix specifically an effective date for a tax lien on personal property, actually within the City on that date, while allowing similar liens for state and county taxes to attach only from the date of assessment of the property; and this is what the legislature did.

The charter of the City of Dallas was granted in 1907 by a special act of the Texas legislature, Sp.Laws 1907, c. 71. Section 194 thereof, being a part of the special act, has the same force and effect as a general statute applicable to Dallas, since the powers granted were such as might have been given to home-rule cities under Article XI, Section 5, of the Texas Constitution, Vernon's Ann.St. City of Dallas v. Western Electric Co., 83 Tex. 243, 18 S.W. 552. That it is competent for the legislature to create a lien for taxes on personal property, and make it superior to existing liens on property subject to taxation, was held in Kirk v. City of Gorman, Tex.Civ.App., 283 S.W. 188. See also Texas Employers Insurance Association v. City of Dallas, Tex. Civ.App., 5 S.W.2d 614, in which there had

been no levy or seizure of the personal property by the city. For treatment in bankruptcy of tax liens in other cases, see Polk County, Iowa, v. Burns, 8 Cir., 247 F. 399; In re Tresslar, D.C., 20 F.2d 663; City of Tampa v. Commercial Building Co., 5 Cir., 54 F.2d 1057.

In City of Sherman v. Municipal Gas Co., 133 Tex. 324, 127 S.W.2d 193, the court stated the classification of Texas cities to be as follows: (1) those incorporated under the general laws of the state; (2) those incorporated by special laws; (3) and those incorporated under home-rule charters. In its latest decision on this question,[1] the Supreme Court not only reaffirmed the rule that the cities of Texas, by the mode of their incorporation, are divided into three classes, but held that a statute expressly applicable to one does not apply to the others. It mentioned that in the City of Sherman case, supra, the court had pointed out numerous statutes in which the three classes of municipalities were recognized by making the enactment applicable to one or more or all of them as the legislature deemed proper. After expressly holding that a certain statute did not apply to the City of Taylor because it was a home-rule city and not "incorporated under the general laws," the court said: "It was the purpose of the Home-Rule Amendment Art. XI, Sec. 5, and the enabling statutes, supra, to bestow upon accepting cities and towns of more than 5000 population full power of self-government, that is, full authority to do anything the legislature could theretofore have authorized them to do. The result is that now it is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers. * * * In this connection, it is significant that Art. 1175, R.S.1925, states that home-rule cites 'shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty,' following which are 34 sections, prescribing powers, one being the power to provide for the levying of any general or special ad valorem tax. Then comes Art.

---

[1] Forwood v. City of Taylor, Tex.Sup., 214 S.W.2d 282, 286, decided October 6, 1948.

1176, ibid., providing: 'The enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided that such powers shall not be inhibited by the State Constitution.' " [2]

■■■ Our conclusion is that Section 194 of the Dallas charter fixes a lien on personal property actually within the City on the specific date; and that the City has such a lien for its taxes, which was preserved in bankruptcy, but that payment of the claim therefor is required to be postponed until payment of the debts specified in clauses (1) and (2) of subdivision a of Section 104 of Title XI of the United States Code Annotated. See Section 107, subs. b and c of said Title. In determining the order of distribution between the City of Dallas and the United States, a careful distinction must be made between tax liens and tax priorities. It is well settled that claims for taxes secured by valid liens, like other valid liens, must be satisfied out of the bankrupt's estate before any distribution at all begins under Section 64, subject, however, to an express statutory exception inserted by the 1938 Act in Section 67, sub. c,[3] which provides for postponement in payment of tax liens in certain circumstances. ·

■■■ The United States asserts no lien and claims no trust fund as security for the payment of its taxes; it admits that its debt for taxes is unsecured. There is no suborder of priority within the priority groups of Section 64, 11 U.S.C.A. § 104. If assets are insufficient to satisfy all claims of a particular class, all creditors within that group must share equally in whatever payment is made. Every unsecured debt of each class must be paid in full in the statutory order before any distribution may be

made to the next class. If the bankrupt holds property in trust for another, the trustee in bankruptcy takes title to such property charged with the trust. So long as the property can be identified according to sound trust doctrines of tracing and identification, it will be treated in bankruptcy as property to which creditors of the bankrupt have no claim, and will be paid over as a whole before disbursements are made to lienholders or unsecured creditors. Matters of this kind have no relation to priorities under Section 64, sub. a, 11 U.S.C.A. § 104, sub. a.

Reversed, and remanded for further proceedings not inconsistent with this opinion.

WALLER, Circuit Judge (dissenting).

The Lone Star Air Cargo Lines, Inc., was not adjudicated a bankrupt until March 19, 1947. Its petition for reorganization in bankruptcy was not filed until February 26, 1947. No assessment was made on its personal property by the City of Dallas, according to the findings of the Referee (Tr. p. 17) and the lower Court (Tr. p. 73), until September 23, 1947. Until that assessment was made, any liability or lien at best could only have been indefinite, uncertain, inchoate, and unenforcible until the assessment was made in September and the amount due thereby determined.

Sec. 104, of Title 11 U.S.C.A., gives the bankruptcy court the authority to order the trustee to pay all "taxes legally *due and owing* by the bankrupt". (Emphasis added.) Clause (5) of § 104, sub. b gives priority to taxes *payable* under paragraph a of that section. The personal property taxes here could not have been "payable" until after assessment, fixing of the millage, approval of the rolls, etc. The test is when the taxes become "legally due and owing" or "payable"—not when a lien accrued—that determines the right of pri-

---

[2] See also Cohen v. City of Houston, Tex.Civ.App., 176 S.W. 809; LeGois v. State, 80 Tex.Cr.R. 356, 190 S.W. 724; City of Houston v. City of Magnolia Park, 115 Tex. 101, 276 S.W. 685; City of Sherman v. Municipal Gas Co., 133 Tex. 324, 127 S.W.2d 193; City of Houston v. State, 142 Tex. 190, 176 S.W.2d 928; Smith v. City of Austin, Tex.Civ.App., 212 S.W.2d 947. The appellees cite City of

Lubbock v. South Plains Hardware Co., Tex.Civ.App., 111 S.W.2d 343; but that case is easily distinguished, because in it the city ordinance provided for a lien to attach to all property owned January 1st "and that which was subsequently acquired," whether assessed or not; and it undertook to extend the tax lien to property not included in the assessment.

[3] 11 U.S.C.A. § 107, sub. c.

ority under Sec. 104. It was correctly stated in Lufkin v. City of Galveston, 73 Tex. 340, 11 S.W. 340, 341: "But the tax could not be paid, and hence was not payable, until the officer designated by law was authorized to receive them; * * *."

The tax here could not have been "payable" on January 1 because there had been no assessment, no valuation, no roll made up, no warrant in the hands of the Tax Collector upon which to collect taxes. Moreover, some of the taxes due the United States became due and payable long before the personal property taxes became "due and owing" or "payable" to the City.

It is observed that $9,515.53 of the claim of the United States was for withholding taxes which the bankrupt collected from its employees for the United States; that $6,996.53 of that sum was collected by the bankrupt during 1946. $2,519 was collected during the first quarter of 1947. These withholding taxes so collected and withheld were due and payable long before there was any assessment by the City, and $6,996.53 was collected and largely payable to the United States in the prior year.

Since § 104, sub. a and § 104, sub. b, Title 11 U.S.C.A., do not order payment made on the basis of prior liens but upon the basis of taxes legally due and owing, or taxes payable that are legally due and owing, and since the taxes to the City of Dallas could not have become legally due and owing, or legally due and owing and payable, until there was an assessment, fixing of the millage, approval of the rolls, etc., on September 23, 1947, and since the City taxes were not due and payable until October 1, 1947, it should not be held that the City of Dallas had any prior right over the United States to the payment of its taxes.

Moreover, I am convinced that the taxes collected by the bankrupt from its employees and withheld were funds which *belonged* to the United States, and constituted trust funds in its hands and in the hands of its trustee, of which funds the United States was the beneficial and equitable owner. See 42 Tex.Jur. p. 649, §§ 45-47, inclusive; 54 Am.Jur. p. 190, § 248, and also § 256, p. 198 Such sums so collected and so withheld never became the property of the bankrupt. Being the property of the United States and not the property of the bankrupt, such funds could not have been appropriated for paying the taxes of the City of Dallas regardless of whether taxes on personal property constituted a lien as of the 1st of January.

Whether these funds can be traced or identified, or whether there has been such a commingling of these funds with others of the bankrupt as to render tracing of these funds impossible or unnecessary, is not revealed by the record.

For the reasons herein set forth I would hold that the City of Dallas is without priority over the United States in right of payment under § 104, sub. a and § 104, sub. b, Title 11 U.S.C.A. I concur, however, in the reversal of the case in order to determine the amount of trust funds remaining in the hands of the trustee and, therefore, payable to the United States.