[File No. 7119]

CITY OF FARGO, a municipal corporation, City of Bismarck, a municipal corporation, City of Devils Lake, a municipal corporation, City of Dickinson, a municipal corporation, City of Grafton, a municipal corporation, City of Grand Forks, a municipal corporation, City of Jamestown, a mu-

nicipal corporation, City of Minot, a municipal corporation, City of Wahpeton, a municipal corporation, George Hoenck, and Magee-Hale Park-O-Meter Company, a corporation, Respondents, v. P. O. SATHRE, as Attorney General of the State of North Dakota; Ralph Croal, as States Attorney of Cass County, North Dakota; George S. Register, as States Attorney of Burleigh County, North Dakota; Milton Moskau, as States Attorney of Grand Forks County, North Dakota; Vernon D. Forbes, as States Attorney of Richland County, North Dakota; Norbert J. Muggli, as States Attorney of Stark County, North Dakota; Frederick T. Cuthbert, as States Attorney of Ramsey County, North Dakota; Wallace E. Warner, as States Attorney of Walsh County, North Dakota; Joseph J. Funke, as States Attorney of Ward County, North Dakota; Russell D. Chase, as States Attorney of Stutsman County, North Dakota; and their successors in office, Appellants.

(36 NW2d 39)

Opinion filed Jan. 27, 1949.   Rehearing denied Feb. 11, 1949

*P. O. Sathre,* Attorney General, *C. E. Brace,* Assistant Attorney General, and *Nels Johnson,* Special Assistant Attorney General, for appellants.

344

*Conmy & Conmy,* for respondents.

*Strutz & Jansonius,* amici curiae.

NUESSLE, Ch. J. The plaintiffs brought this action to enjoin the defendants from enforcing a statute approved by the people, pursuant to the provisions of the Constitution relating to the initiative of statutes, at an election held June 29, 1948, "making it unlawful for the State of North Dakota, its political

subdivisions, counties, cities, villages, and the state highway department, to establish and maintain any mechanical device or devices known as 'parking meters', or by whatever names designated, requiring the deposit therein of coins or tokens for the privilege of parking cars or other vehicles upon the streets and highways in the State of North Dakota."

The action is predicated upon the proposition that said initiated enactment is unconstitutional; that it contravenes certain provisions of the Constitution of the State of North Dakota and also contravenes certain provisions of the Constitution of the United States including the Fourteenth Amendment. The plaintiffs are George Hoenck, an elector, resident and taxpayer of the City of Fargo in this state; the Magee-Hale Park-O-Meter Company, a foreign corporation; the City of Fargo, the City of Bismarck; the City of Grand Forks; the City of Wahpeton; the City of Dickinson; the City of Devils Lake; the City of Grafton; the City of Minot; and the City of Jamestown. The defendants are the Attorney General of the State of North Dakota and the State's Attorneys of the several counties in which the plaintiff cities are located.

In the complaint it is alleged that parking meters have been purchased by each of the plaintiff cities; that each of such cities has made a large investment therein; that each of such cities is a "user of parking meters requiring the deposit of coins or tokens where automobiles or other vehicles are parked on designated streets, under traffic control ordinances duly and legally promulgated in each of said cities, and still in full force and effect except as they may be affected by the above mentioned initiated measure; that such parking meters are needed and useful instrumentalities in policing and controlling traffic and that the prohibition of their use will compel the plaintiff cities to expend large sums of money for additional policemen to control traffic, will result in increased taxes, will destroy the business of the Magee-Hale Park-O-Meter Company and almost wholly destroy the investment of the plaintiff cities.

It is further alleged that the said initiated measure "is invalid and void for the reason that it violates the Constitution

of the State of North Dakota, particularly Sections 1, 13, 14, 20, and 22 of Article I, and Sections 25, 61, and 64 of Article II, and the Constitution of the United States, particularly the Fifth and Fourteenth Amendments thereof, and the commerce clause, Article I, Section 8, in that: . . . ."

It is further alleged that "all of the above named plaintiffs have an interest in the subject of this action and in obtaining the relief sought."

"That an actual controversy exists as to whether the initiated measure, assuming its constitutionality and legality, makes void and of no effect the existing ordinances providing for the use of parking meters, and unless this question is promptly settled by declaratory judgment much litigation will arise and much annoyance and expense will be suffered by the plaintiffs, they will be caused irreparable injury, public and private rights will be interfered with and destroyed, and plaintiffs have no plain, speedy or adequate remedy at law.

"That this action is brought for an injunction and for the purpose of having said initiated measure declared illegal, void and of no effect and for a declaratory judgment if necessary. That the defendants, as is their legal duty, intend to and will enforce said initiated measure unless restrained during the pendency of this action, and this will result in innumerable lawsuits and much damage to plaintiffs, which cannot be adequately compensated for, will interfere with and destroy the public and private rights of the plaintiffs and cause them irreparable damage and they have no plain, speedy or adequate remedy at law."

The plaintiffs pray: (1) That they have judgment permanently enjoining the defendants from enforcing the provisions of the initiated measure and that "said measure be held to be unconstitutional, void and illegal and of no effect." (2) That declaratory judgment be rendered as to the status and effect of ordinances providing for the use of parking meters which were in force at the time the initiated measure became effective.

The defendants demurred to the complaint on the ground, among others, that the complaint does not state facts sufficient

to constitute a cause of action against the defendants. The trial court overruled the demurrer. The defendants stood on the demurrer and the trial court made findings of fact, finding all the allegations of the complaint to be true and ordered judgment in favor of the plaintiffs that the defendants and each of them, their assistants and successors in office, be permanently restrained and enjoined from enforcing the provisions of the initiated measure. Judgment was entered accordingly and the defendants have appealed.

On appeal they press the objections that were raised by the demurrer. They contend:

(1) That the complaint fails to set forth facts justifying or warranting the court in granting injunctive relief, even though the statute is unconstitutional.

(2) That the statute is constitutional and that it operates to deprive a city of power to enact any ordinance which provides for the establishment and maintenance of any mechanical device or devices known as parking meters or by whatever name designated requiring the deposit therein of coins where automobiles or other vehicles are parked on the streets and highways of a city and that it invalidates and renders unenforceable all ordinances providing for the maintenance of such parking meters or devices, that were in existence in any city in North Dakota at the time the said initiated measure became effective. These contentions will be considered in the order stated.

The defendants contend that the facts alleged in the complaint and found by the court in its findings of fact do not warrant or justify the granting of injunctive relief even though the statute is unconstitutional; that the facts set forth in the complaint and found by the court fail to show that the plaintiffs are threatened with or likely to suffer any irreparable injury, and that if the statute is unconstitutional they have a full and adequate remedy at law by setting up the unconstitutionality as a defense in any action or proceeding to enforce the statute.

In our opinion defendants' contention is well founded.

It is a familiar principle of law that ordinarily to warrant injunctive relief it must clearly appear that some act has been

done or will be done which will cause irreparable injury. 43 CJS p 446. Injunctions against the enforcement of a statute will in no case be granted in the absence of a clear showing of danger of irreparable injury "both great and immediate." Spielman Motor Sales Co. v. Dodge, 295 US 89, 79 L ed 1322; Douglas v. Jeannette, 319 US 157, 87 L ed 1324; Boise Artesian Hot & Cold Water Co. v. Boise City, 213 US 276, 53 L ed 796; Northport Power & Light Co. v. Hartley, 283 US 568, 75 L ed 1275; State Bank of Nebraska v. Rohren, 55 Neb 223, 75 NW 543; Omaha Grain Exchange v. Spillman, Atty. Gen. 118 Neb 729, 226 NW 452; Lockwood v. Baird, 59 ND 713, 231 NW 851; Richmond v. Miller, 70 ND 157, 292 NW 633; McIntyre et al. v. State Board of Higher Education et al. 71 ND 630, 3 NW2d 463; Williams v. State Board of Barber Examiners et al. 75 ND 33, 25 NW2d 282.

"The mere fact that a statute is unconstitutional is not alone a sufficient ground for enjoining its enforcement; to this there must be added some wrong or injury respecting the person or property not amply remediable by any proceeding at law. The injunction should not be granted except when necessary to prevent great and irreparable injury." 32 CJ 244.

In Omaha Grain Exchange v. Spillman, supra, the Supreme Court of Nebraska held:

"In an action to enjoin a state officer from enforcing the provisions of a statute, alleged to be unconstitutional, injunctive relief will be denied, unless it clearly appears that the applicant is without adequate remedy in the usual course of the law and will suffer irreparable loss or injury unless injunctive relief is granted.

"To authorize a court of equity to interfere by injunction, the facts averred in the petition must show that if the injunction be denied, the complainant will suffer an irreparable injury for which he has no adequate remedy at law."

In Lockwood v. Baird, 59 ND 713, 719, 231 NW 851, 853 this court said:

" 'The mere fact that a law is alleged to be unconstitutional does not confer jurisdiction on courts to interfere with the acts of executive officers while proceeding in pursuance of its re-

quirements.' 14 RCL 435. . . . To entitle a plaintiff to relief against real or imaginary injuries from unauthorized acts of public officers he 'must bring his case under some acknowledged head of equity jurisdiction and show what special injury he will sustain thereby distinct from that suffered by others.' Lewis & S. Inj. p 464. And where it is apparent that the remedy at law is adequate, relief by injunction will be refused. 14 RCL pp 435, 436."

What do plaintiffs claim that the defendants will do unless they are restrained from acting? What injury to the plaintiffs could or would result if the defendants proceed to do what it is alleged they will do unless restrained? There is no allegation and no finding that the defendants or any of them have indicated any purpose to injure or remove any of the parking meters or that the defendants will resort to any means other than instituting suit or proceeding in court to enforce the initiated measure. The only allegation in the complaint with respect to the proposed action of the defendants is "that the defendants as is their legal duty intend and will enforce said initiated measure" unless restrained from so doing. It is not stated what particular method or means the defendants will employ to enforce the measure but it must be assumed that they will seek to enforce the law by action or proceeding in a court of law. Certainly there is no law which purports to invest the defendants with any authority or make it their legal duty to employ any means of enforcement other than legal proceedings in the courts. If any action or proceeding is brought by the attorney general for the enforcement of the measure and if the statute is unconstitutional, then the plaintiffs have a perfect defense and are afforded an adequate remedy at law and are not entitled to injunctive relief. Omaha Grain Exchange v. Spillman (Neb) supra; Lockwood v. Baird (ND) supra; Spielman Motor Sales v. Dodge, 295 US 89, 79 L ed 1322, 55 S Ct 678, supra; Douglas v. Jeannette, 319 US 157, 87 L ed 1324, 63 S Ct 877, 882, supra; Boise Artesian Hot & Cold Water Co. v. Boise City, 213 US 276, 53 L ed 796, 29 S Ct 426; supra; Northport Power & Light Co. v. Hartley, 283 US 568, 75 L ed 1275, 51 S Ct

581, supra; Williams v. State Board of Barber Examiners, et al. 75 ND 33, 25 NW2d 282, supra.

The only injury that would be likely to result from the acts which it is alleged that the defendants intend to and will take unless restrained is such expense and inconvenience as naturally would result from the proceedings to enforce the statute and this obviously constitutes no ground for injunctive relief. Boise Artesian Hot & Cold Water Co. v. Boise City, 213 US 276. 53 L ed 796, 29 S Ct 426, supra; Northport Power & Light Co. v. Hartley, 283 US 568, 75 L ed 1275, 51 S Ct 581, supra.

In the case last cited the plaintiff brought suit to enjoin the Governor and the Attorney General of the State of Washington from enforcing a provision of the constitution and a statute of that state which would operate to forfeit or escheat to the state lands in the State of Washington then owned by the plaintiff. The provision of the constitution prohibited aliens from owning lands in the state and provided for a forfeiture of such lands to the state and further provided that every corporation, the majority of the capital stock of which was owned by aliens, should be considered an alien within the purview of the constitutional provision. The statute involved had been enacted for the purpose of putting the constitutional provision into effect. It was alleged in the petition for injunction "that the defendants have threatened and will attempt to forfeit and escheat to the state the plaintiff's rights by prosecuting a suit at law in the courts of the state as a result of which the plaintiffs will suffer irreparable loss." 283 US at p 569, 75 L ed at p 1276. The Supreme Court of the United States held that the petition showed no ground for enjoining the officers of the state from instituting action to enforce the provisions of the constitution and the statute. In the opinion of the court written by Mr. Justice Holmes speaking for a unanimous court it is said:

"The only injury alleged is the result of the suit in the state courts. So far as appears that result will ensue only upon a decision against the appellant. It is an odd ground for an injunction against a suit that the suit may turn out against the

party sued. If the action is based upon an unconstitutional law and if the trial court upholds it, still the appellant can protect its rights as fully in the state courts as elsewhere. As it is put by Mr. Justice Moody speaking for a unanimous court: 'It is safe to say that no case can be found where this court has deliberately approved the issuance of an injunction against the enforcement of an ordinance resting on state authority, merely because it was illegal or unconstitutional, unless further circumstances were shown which brought the case within some clear ground of equity jurisdiction.' "

We are all agreed that the facts alleged in the complaint and found by the court in this case did not, and do not, justify or sustain a judgment enjoining the defendants from enforcing the initiated measure.

Plaintiffs ask for a declaratory judgment as to the status and effect of ordinances providing for the establishment and maintenance of parking meters which were in effect at and prior to the time the initiated measure became effective; and as to the rights of the plaintiff cities with respect to parking meters that had been established under such ordinances and were being operated prior to and at the time the initiated measure became effective (Compare, City of Milwaukee v. Chicago and N. W. R. Co. 201 Wis 512, 230 NW 626). The question which we are asked to determine and the rights we are asked to declare necessitate a consideration of the constitutionality of the initiated measure, for there can be no doubt as to the meaning and purpose of such initiated measure or its effect upon ordinances in force at the time such initiated measure became operative as a law, if such measure is a valid enactment. The measure not only makes it unlawful to establish and maintain parking meters using coins or tokens but it specifically provides: "Any and all ordinances and resolutions now existing authorizing the establishment and maintenance of such mechanical devices or parking meters, or by whatever name designated, are hereby declared null and void."

All aspects of the question upon which a declaratory judgment is asked have been fully argued. The attorney general

contends that the initiated measure is constitutional; that all its provisions are effective and operative and that consequently the plaintiff cities are not only prohibited from providing for and using parking meters in the manner set forth in the statute, and from enacting ordinances for the establishment, maintenance, and such use of the meters, but that the ordinances which were in effect at the time the initiated measure became effective were rendered void and of no effect. On the other hand the plaintiffs contend; (1) that the initiated measure was not constitutionally enacted and that it also contravenes provisions of both the Constitution of the State and the Constitution of the United States and is on that account wholly void; but, (2) even though the initiated measure is a valid enactment the parking meter ordinances in force when the initiated measure became effective were not rendered invalid, and that the right of the plaintiff cities to continue to operate parking meters that had been installed under such ordinances and were being operated prior to and at the time the initiated measure became a law would not be affected by the initiated measure.

The grounds on which the plaintiffs predicate their contentions are stated by them as follows. (And in our consideration of these grounds hereinafter, they will be referred to by the numbers here given to them.)

"The initiated measure is invalid and void for the reason that it violates the Constitution of the State of North Dakota, particularly Sections 1, 13, 14, 20 and 22 of Article I, and Sections 25, 61 and 64 of Article II, and the Constitution of the United States, particularly the Fifth and Fourteenth Amendments thereof, and the commerce clause, Article I, Section 8, in that:

(1) It is unreasonably arbitrary, oppressive and capricious.

(2) Its operation will not in any degree prevent an offense or evil, or preserve public health, morals, safety or welfare, and has no real or substantial relation to these objects.

(3) It denies the right to carry on a lawful business in a lawful manner.

(4) It takes and destroys property and property rights without just cause or reason. .

(5) It prevents the use and sale in North Dakota of a legitimate article without any lawful reason, and unreasonably burdens interstate commerce.

(6) It unreasonably, arbitrarily, capriciously and unnecessarily increases the tax burden of plaintiff Hoenck and other taxpayers similarly situated, and restricts and hampers their use of their property.

(7) It selects a means of regulation—an absolute banning of the use of parking meters—which has no real or substantial relation to any known object sought to be obtained, and is a palpable invasion of plaintiffs' rights secured by fundamental law.

(8) It embraces more than one subject.

(9) It takes or damages private property for public use without just compensation.

(10) It amends existing law by reference only.

(11) It repeals and makes void ordinances by reference only.

(12) The ballot title does not fairly represent the measure proposed.

(13) The act is broader than its title.

(14) The act is not legislative but executive and not a proper subject for an initiative measure."

We will first consider the contention that the measure was not submitted and enacted in the manner as required by Section 25 of the Constitution, which provides:

"The legislative power of this state shall be vested in a legislature consisting of a senate and a house of representatives. The people, however, reserve the power, first, to propose measures and to enact or reject the same at the polls; . . . .

"The first power reserved is the initiative. Ten thousand electors at large may propose any measure by initiative petition. Every such petition shall contain the full text of the measure and shall be filed with the Secretary of State not less

than ninety days before the election at which it is to be voted upon.

"Each measure initiated by . . . the electors, shall be submitted by its ballot title, which shall be placed upon the ballot by the Secretary of State . . . .

"Any measure . . . submitted to the electors of the state, shall become a law when approved by a majority of the votes cast thereon. And such law shall go into effect on the 30th day after the election, unless otherwise specified in the measure.

"The Secretary of State shall pass upon each petition, and if he finds it insufficient, he shall notify the 'Committee for the Petitioners' and allow twenty days for correction or amendment. All decisions of the Secretary of State in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the Secretary of State shall place the measure on the ballot and no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon. If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it.

"Each petition shall have printed thereon a ballot title, which shall fairly represent the subject matter of the measure, and the names of at least five electors who shall constitute the 'committee for the petitioners' and who shall represent and act for the petitioners.

"All measures submitted to the electors shall be published by the state as follows: 'The Secretary of State shall cause to be printed and mailed to each elector a publicity pamphlet, containing a copy of each measure together with its ballot title, to be submitted at any election. . . . .

"This section shall be self executing and all of its provisions treated as mandatory. Laws may be enacted to facilitate its operation, but no laws shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people."

The initiative petition here involved filed with the Secretary of State read:

"PETITION FOR THE INITIATION OF AN ACT MAKING IT UNLAWFUL FOR THE STATE OF NORTH DAKOTA, ITS POLITICAL SUBDIVISIONS, COUNTIES, CITIES, VILLAGES AND THE STATE HIGHWAY DEPARTMENT TO ESTABLISH AND MAINTAIN ANY DEVICES KNOWN AS 'PARKING METERS', OR BY WHATEVER NAME DESIGNATED, REQUIRING THE DEPOSIT OF COINS OR TOKENS THEREIN FOR THE PRIVILEGE OF PARKING CARS OR OTHER VEHICLES UPON THE STREETS AND HIGHWAYS IN THE STATE OF NORTH DAKOTA, AND DECLARING VOID ANY EXISTING ORDINANCE OR RESOLUTION AUTHORIZING THE USE OF SUCH DEVICES.

*"To the Secretary of State of the State of North Dakota:*

"We, the undersigned electors of the State of North Dakota, consisting of more than ten thousand of the electors at large hereby propose to initiate and enact the following measure, and request that the same be placed on the ballot in the manner and form provided by law, and submitted to the qualified electors of the State of North Dakota, for their approval or rejection as provided by Section 202 of the State Constitution.

"As such petitioners, we hereby present and propose the following ballot title under which said enactment shall be placed, to-wit:

"AN ACT MAKING IT UNLAWFUL FOR THE STATE OF NORTH DAKOTA, ITS POLITICAL SUBDIVISIONS, COUNTIES, CITIES, VILLAGES AND THE STATE HIGHWAY DEPARTMENT, TO ESTABLISH AND MAINTAIN ANY DEVICES KNOWN AS "PARKING METERS", OR BY WHATEVER NAME DESIGNATED, REQUIRING THE DEPOSIT OF COINS OR TOKENS THEREIN FOR THE PRIVILEGE OF PARKING CARS OR OTHER VEHICLES UPON THE STREETS AND HIGHWAYS IN THE STATE OF NORTH DAKOTA, AND DECLARING VOID ANY EXISTING ORDINANCE OR RESOLUTION AUTHORIZING THE USE OF SUCH DEVICES.

"AN ACT Making it unlawful for the State of North Dakota,

its political subdivisions, counties, cities, villages, and the state highway department, to establish and maintain any mechanical device or devices known as "parking meters", or by whatever name designated, requiring the deposit therein of coins or tokens for the privilege of parking cars or other vehicles upon the streets and highways in the State of North Dakota.

"BE IT ENACTED BY THE PEOPLE OF THE STATE OF NORTH DAKOTA:

*Section 1.* From and after the passage of this measure, it shall be unlawful for the State of North Dakota, its political subdivisions, counties, cities, villages, and the state highway department to establish and maintain any mechanical device or devices known as 'parking meters', or by whatever name designated, requiring the deposit therein of coins or tokens for the privilege of parking cars or other vehicles upon the streets and highways in the State of North Dakota.

*Section 2.* Any and all ordinances and resolutions now existing authorizing the establishment and maintenance of such mechanical devices or parking meters, or by whatever name designated, are hereby declared null and void.

*Section 3.* All acts or parts of acts in conflict herewith are hereby in all things repealed."

The Secretary of State accepted the petition and filed the same but did not notify the committee for the petitioners as to its insufficiency in any respect. Thereafter, however, he caused the measure to be printed and published in the publicity pamphlet mailed to the electors as follows below.

"INITIATED MEASURE

NO. 2—PROHIBITING PARKING METERS IN POLITICAL SUBDIVISIONS

Submitted by Initiative Petition.

The full text of the proposed measure shall be:

AN ACT MAKING IT UNLAWFUL FOR THE STATE OF NORTH DAKOTA, ITS POLITICAL SUBDIVISIONS, COUNTIES, CITIES, VILLAGES, AND THE STATE HIGHWAY DEPARTMENT, TO ESTABLISH AND MAINTAIN ANY MECHANICAL DEVICE OR DEVICES KNOWN AS

'PARKING METERS,' OR BY WHATEVER NAME DESIGNATED, REQUIRING THE DEPOSIT THEREIN OF COINS OR TOKENS FOR THE PRIVILEGE OF PARKING CARS OR OTHER VEHICLES UPON THE STREETS AND HIGHWAYS IN THE STATE OF NORTH DAKOTA.

Be it Enacted By The People Of The State of North Dakota:

Section 1. From and after the passage of this measure, it shall be unlawful for the State of North Dakota, its political subdivisions, counties, cities, villages, and the state highway department to establish and maintain any mechanical device or devices known as 'parking meters,' or by whatever name designated, requiring the deposit therein of coins or tokens for the privilege of parking cars or other vehicles upon the streets and highways in the State of North Dakota.

"Section 2. Any and all ordinances and resolutions now existing authorizing the establishment and maintenance of such mechanical devices or parking meters, or by whatever name designated, are hereby declared null and void.

"Section 3. All Acts or parts of Acts in conflict herewith are hereby in all things repealed."

The Secretary of State then caused the measure to be printed upon the ballot in exactly the same style and words with the addition thereto of,

"Shall Said Initiative Measure Be Approved?

| | |
|---|---|
| Yes | ☐ |
| No · | ☐ |

"

Thus it will be seen that the measure as printed in the publicity pamphlet and placed upon the ballot failed to contain the ballot title as set forth in the petition and that the Secretary of State had, instead of using that title, substituted one of his own making, to-wit—"Prohibiting Parking Meters in Political Subdivisions."

In the plaintiffs' complaint the validity of the statute is chal-

lenged as set forth above (No. 12) on the ground that "the ballot title does not fairly represent the measure proposed." However, in plaintiffs' brief and on argument this challenge was enlarged to include the ground that the Secretary of State failed to follow the constitutional requirement and print the ballot title set forth in the petition, although he had not notified the committee for the petitioners as to the insufficiency of the ballot title contained therein.

Obviously it was the duty of the secretary to use the ballot title set forth in the petition unless he found it to be insufficient. If he found it to be insufficient it was likewise his duty to notify the committee of this finding. The plaintiffs' challenge is directed particularly at the action of the Secretary of State in these respects and they insist that his failure to comply with the mandate of Section 25 is fatal to the validity of the enactment.

We believe the general rule with respect to elections is as stated in Jones v. State, 153 Ind 440, 55 NE 229,

"All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to·the validity of an election, or that its omission shall render it void."

See also Jackson v. Nims, 316 Mich 694, 26 NW2d 569; Kiernan v. Portland, 57 Or 454, 111 P 379, 112 P 402, 37 LRA NS 332; 28 Am Jur 162; 20 CJ 181, § 223, et seq. The reason behind this rule is that the will of the people freely and intelligently expressed ought not to be defeated because of the mistake of an officer or of any technical fault. And the saving provision in Section 25 of the Constitution quoted supra, indicates that this was the reason motivating the inclusion of that provision in Section 25.

The ballot title printed in the publicity pamphlet and on the ballot read:

"INITIATED MEASURE

NO. 2—PROHIBITING PARKING METERS IN
POLITICAL SUBDIVISIONS."

Immediately following this ballot title on the ballot the measure was set forth in full as we have heretofore shown. Section 25 of the Constitution does not require that the measure be printed in full on the ballot. It provides,

"Each measure initiated by . . . the electors, shall be submitted by its ballot title, which shall be placed upon the ballot by the Secretary of State . . . ."

However, the fact that the Secretary of State printed the measure itself on the ballot cannot be said to have in any way operated to invalidate the ballot. Of course the purpose of a ballot title is to advise the electors in understandable language as to the content and purpose of the measure to be voted upon. Here the measure itself was short and perfectly understandable. It immediately followed the ballot title on the ballot. Under the circumstances even if the ballot title were not clear and understandable the elector could not help but understand the purpose and intent of the measure since it was thus placed on the ballot. And it is beyond question that anyone of ordinary understanding who could read, reading the ballot title alone, or reading the title of the measure alone, and most certainly reading both the ballot title and the title of the measure, would comprehend the purpose and effect of the measure.

We must presume that in the instant case the Secretary of State did not deem the ballot title as set forth in the petition to be a proper title. Accordingly he devised the ballot title which was used and printed, both in the publicity pamphlet and on the ballot. But he did not submit his objection to the petitioners or give them an opportunity to correct or amend the petition in this respect or to challenge his decision in the Supreme Court. If he had done so and his decision had been thus challenged and the matter were undecided at the time of the election, then pursuant to the constitutional provision above

quoted the election would have been a valid election even though the court should have held subsequently that the objection was not good and his action in substituting another title was improper. In the case of Larkin v. Gronna, 69 ND 234, 285 NW 59, we had occasion to consider and pass upon a contention in substance practically identical with that made here. In that case an election was held on an initiated petition to amend the constitution. It was challenged among other things on the ground that neither the title of the act nor the ballot title fairly represented the proposed amendment. Judge Burr, speaking for the court says,

" 'All provisions of the Constitution relating to the submission and adoption of measures by initiative petition and on referendum petition, shall apply to the submission and adoption of amendments to the Constitution of the state.' These provisions for submission and adoption are set forth in Section 25. This Section 25 requires: 'Such petition shall contain the full text of the measure and shall be filed with the secretary of state. . . . . Each petition shall have printed thereon a ballot title which shall fairly represent the subject matter of the measure, . . . .' and that 'The secretary of state shall pass upon each petition, and if he finds it insufficient he shall notify the "committee for the petitioners" and allow twenty days for correction or amendment. All decisions of the secretary of state in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the secretary of state shall place the measure on the ballot and *no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon.'* "

The opinion further reads,

"The secretary of state was governed by the Constitution as set forth in Section 25. All the provisions of this section are mandatory. They are mandatory upon the court as well as upon the people and the secretary of state. The decision of the secretary of state was subject to review by this court. It is the clear import of Section 25 that all such decisions are final

unless reversed by the court prior to the election. If the decision of the secretary of state as to the sufficiency of such petition is attacked and being reviewed prior to the election, but no decision rendered until thereafter, a subsequent decision cannot invalidate the measure if approved. So says the Constitution. *It would be an anomalous situation if the decision of the secretary of state could be reviewed after the election simply because there was no attack upon it before the election in view of the fact that if there is an attack before the election the measure if adopted is not invalidated unless his decision is reviewed and decided prior to the election.* The time to review the decision of the secretary of state in passing upon the objections . . . has long since passed. We no longer possess the power to review, and it is useless for this court to give an advisory opinion on the question involved even if such were permissible."

Therefore, consistent with our holding in Larkin v. Gronna and in accord with the general rule with respect to elections hereinbefore stated, we hold the fact that the Secretary of State did not use the ballot title contained in the petition but invented one of his own which was used in the stead thereof, did not invalidate the election.

The plaintiffs contend (Nos. 8 and 13) that the act is not only multifarious but that it is also broader than its title and therefore violates Section 61 of the Constitution of North Dakota providing that "No bill shall embrace more than one subject, which shall be expressed in its title, . . . ." They also contend (Nos. 10 and 11) that it amends existing law by reference only and repeals and makes void ordinances by reference only thus offending Section 64 of the Constitution which provides that "No bill shall be revised or amended nor the provisions thereof extended or incorporated in any other bill by reference to its title only, but so much thereof as is revised, amended or extended or so incorporated shall be re-enacted and published at length." As to the first contention thus made it is enough to say that Section 1 of the act is identical in wording with that of the title and that Sections 2 and 3 of the act

are in fact no more than surplusage. The subject of the act is the prohibition of the use of parking meters which exact a financial return. The second and third sections no more than state the effect of the adoption of the first section and in any event are germane to that subject. This court has often had occasion to consider Section 61 of the Constitution and no further discussion is required here. But see in this connection, Great Northern R. Co. v. Duncan et al. 42 ND 346, 176 NW 992; State v. Isensee, 64 ND 1, 249 NW 898. As to the second contention that the act violates Section 64 we can dismiss that also by saying that the act is complete in itself. It is an independent enactment. It makes no reference to any other statute. Insofar as it affects or modifies any other statute, it does so by implication only. Thus it does not transgress Section 64. See State v. Fargo Bottling Works Co. 19 ND 396, 124 NW 387, 26 LRA NS 872; State ex rel. Gammons v. Shafer, 63 ND 128, 246 NW 874, and cases cited therein.

Before passing on the other constitutional challenges interposed by the plaintiffs (Nos. 1, 2, 3, 4, 5, 6, 7, 9, and 14) it will be well to consider the relationship of municipal corporations to the state itself. Cities and other political subdivisions of the state are merely agencies of the state. Such powers as they have are conferred upon them by the people of the state either by way of legislative enactment or through the initiative. Having been thus conferred they may be modified or taken away. See State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA 1918B 156, Ann Cas 1918A 583, where this court quoted with approval from the case of Atkin v. Kansas, 191 US 207, 48 L ed 148, 24 S Ct 124, as follows:

"Such corporations are the creatures, mere political subdivisions, of the state, for the purpose of exercising a part of its powers. They may exert only such powers as are expressly granted to them, or such as may be necessarily implied from those granted. What they lawfully do of a public character is done under the sanction of the State. They are, in every essential sense, only auxiliaries of the State for the purposes of local government. They may be created, or, having been

created, their powers may be restricted or enlarged or altogether withdrawn at the will of the legislature; the authority of the legislature, when restricting or withdrawing such powers, being subject only to the fundamental condition that the collective and individual rights of the people of the municipality shall not thereby be destroyed."

See also Lang v. Cavalier, 59 ND 75, 228 NW 819 and cases cited; State ex rel. Dreyer v. Brekke, 75 ND 468, 28 NW2d 598. Plaintiffs' challenges of unconstitutionality must be considered in the light of this relationship between the State of North Dakota and its cities. Furthermore, in this consideration it must be borne in mind that the effect of the act is not to ban the use of parking meters, but only their use when by it a financial toll is exacted. The statute reads not that all meters are banned but that those "requiring the deposit therein of coins or tokens" for the parking of cars or other vehicles upon the streets, etc. As we read the statute the word token as used therein means one that is purchased for or represents money. In State ex rel. Dreyer v. Brekke (ND) supra, we held that cities in the exercise of their statutory power to regulate the use of streets might enact ordinances providing for parking meters. As we have shown above, since this power is conferred by statute it may by statute be taken away. This being so it is obvious that these objections made by the plaintiffs to the statute here in question cannot be sustained. Clearly the motivating thought behind the instant action is financial. Though the ordinance purports to be a purely regulatory measure it requires no legal Sherlock Holmes to penetrate the disguise and discern that it is also a revenue producing measure. The city plaintiffs complain because they will lose the revenue resulting from the toll collected by the operation of the meters. The plaintiff Hoenck complains because if the revenue thus obtained is not collected he, as a taxpayer, will suffer because his taxes will be increased. The plaintiff Meter Company complains because its business will be injured by reason of the enforcement of the statute. Since the city in passing the meter ordinance was only exercising a power granted to it by the state, and the state

having granted the power, may withdraw it at its pleasure, the cities have no ground for complaint when it does so. They will still have the meters. They may, if they wish, use them so long as they exact no financial return by their use. The plaintiff Hoenck can no more complain when the state denies the power to the city to so use the meters than he can complain should the city itself repeal the ordinance providing for their use. Surely he cannot contend that the ordinance is irrepealable and that having once been put into effect it cannot be repealed by the city authorities. And this may likewise be said with respect to any other complaint that he may make on account of the statute. Nor has the plaintiff Meter Company any valid ground for complaint. The city is merely the agency of the state in regulating the use of the streets. The state is no more bound to use parking meters than an individual would be bound to use any particular mechanical device in carrying on an occupation. And since this is so as to the state, it is so as to its agencies. See Tribune Printing & Binding Co. v. Barnes, 7 ND 591, 75 NW 904. In that case this court said in passing upon a statute prohibiting county officials from procuring county supplies manufactured at places without the state on a challenge that such statute would violate Section 8, Article 1 of the federal constitution relating to commerce among the states,

"No authority is cited in support of this contention by counsel, and we are unaware of the existence of any such authority. Viewed as a question of principle, we are unable to see why the state is forbidden to do what an individual certainly may do with impunity, viz., elect from whom it will purchase supplies needed in the discharge of its corporate functions. If such election may lawfully be made, it certainly is competent for the state to direct its officials by a mandatory statute to procure their office supplies from those who produce the same within its own limits, it having elected to purchase none others either for the use of the state, as such, or for the use of subordinate political bodies within the state."

See also in this connection State ex rel. Linde v. Taylor, 33 ND 76, 156 NW 561, LRA1918B 156, Ann Cas 1918A 583, supra.

Somewhat paraphrasing what is said in the Tribune case;— Viewed as a question of principle, we are unable to see why the state is forbidden to do what an individual may certainly do with impunity, viz., determine what methods it will permit its agencies to adopt in the discharge of their corporate functions.

We deem it unnecessary to further elaborate. Consistent with what we have said above we must hold that the statute challenged by the plaintiffs and respondents is a valid enactment and that its effect is to void and nullify all ordinances of the city plaintiffs inconsistent with its provisions. Accordingly, the judgment of the district court from which the instant appeal was taken must be and it is reversed and the case is remanded with directions that a declaratory judgment consistent with this opinion be ordered and entered.

BURKE and CHRISTIANSON, JJ., and BRODERICK, District J., concur.

CHRISTIANSON, J. (concurring). I concur fully in the foregoing opinion prepared by the Chief Justice. However, the question that is presented in this case with respect to the ballot title is of such nature that I deem it proper and desirable to express some individual views with respect thereto.

It is "an established general rule that constitutional provisions are to be construed as mandatory unless, by express provision or by necessary implication, a different intention is manifested." 16 CJS p 120. In this state this rule was embodied in the constitution as originally adopted, ND Const, Sec. 21; and the constitutional provision relating to the initiative and referendum specifically provides that "this section shall be self executing and all of its provisions shall be treated as mandatory." ND Const, Sec. 25.

As shown in the principal opinion, in this case there was not a strict compliance with the provisions of Sec. 25 of the Constitution with respect to the ballot title as printed upon the election ballot. In the preparation of the ballot there was a departure from the direction or command of the constitution in stating the ballot title of the initiated measure and the

question is presented whether such departure operated to nullify the election; or whether the irregularities in the ballot may no longer be asserted after the measure was submitted to and approved by the electors at the election. Legal writers and courts have recognized that the question thus presented is one of much "difficulty and embarrassment." Note 10 LRA NS at p 149. One of the leading authorities on constitutional law in this country (Judge Cooley) said, "The courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of the constitution." It is apparent that the question as to the ballot title is a delicate and difficult one.

The constitution says that all the provisions of the section providing for the initiative and referendum shall be treated as mandatory. ND Const, Sec. 25. This constitutional mandate must, of course, be observed. The judges have taken an oath to support the constitution. Manifestly, they have no higher duty than to fulfill their oaths of office and carry out the commands of the constitution.

True, the provisions of Sec. 25 of the Constitution with respect to the ballot must be treated as mandatory. But to whom is the mandate given with respect to the ballot, and how shall a proposal for an initiated measure be stated thereon? To whom does Section 25 of the Constitution give the command with respect to the preparation and form of the ballot that shall be made available to the voters at an election where an initiated measure is being submitted for approval or rejection? The command is not to the voter who "has nothing to do with making up the ballot but is required to use it in order to exercise his right to vote." Kulp v. Railey, 99 Tex 310, 89 SW 957. The command relating to the preparation and form of the ballot is obviously given to the officer whose duty it is to place the measure upon the ballot. The provisions are mandatory and binding upon the officer charged with such duty "and for whose guidance and direction they are needed." Blackmer v. Hildreth et al. 181 Mass 29, 63 NE 14.

In Blackmer v. Hildreth et al. (Mass) supra, the Supreme Judicial Court of Massachusetts had occasion to consider the effect of

errors and omissions in the official ballot resulting from failure to ·comply with certain statutory provisions relating to the preparation of the ballot. The court said that such laws "are binding upon the officers for whose guidance and direction they are needed."

"But with the preparation of the ballot the influence of these provisions ends. If there be irregularities like those in this case they do not accompany the ballot and taint it in the hands of the voter. This view of the statute gives due weight and scope to the provisions in question, and preserves the sanctity of the right of suffrage and its free and honest exercise. To hold otherwise would be to lose sight of the purpose for which these provisions were made, namely, to provide the method and time for the preparation of the ballot, and would subject our elections to intolerable and perplexing technicalities in no way material to the substantial merits of the controversy or to the freedom .and result of the action of the voters. Its natural tendency would be to thwart rather than to secure a true expression of the popular will."

In considering a similar question the Supreme Court of Montana said :

"There is wisdom in that construction of election laws which holds rigidly to the doctrine that in our country, where the will of the people is supreme, when clearly expressed it cannot be defeated by a claim that an official neglected to properly make up the ballot published and voted." State ex rel. Brooks v. Fransham, 19 Mont 273, 48 P 1.

Errors and omissions in the official ballot which do not prevent a free and intelligent casting of the vote, and which could not have wrought a change in the result of the election do not invalidate the election. 28 Am Jur, Initiative, Referendum, and Recall, p 162, § 17; 18 Am Jur, Elections, p 298, § 280, p 300, § 183; Note :—12 A & E Ann Cas, p 722.

It is well settled that a different rule applies in measuring the effect of noncompliance with the provisions of law relating to an election where it is sought to set aside the result of an election from that which applies where the question of non-

compliance is raised in a proceeding to enforce compliance before the election is held. 9 RCL p 1173; 30 CJ § 223; pp 181–182; Jackson v. Nims, 316 Mich 694, 26 NW2d 569; State ex rel. Laird v. Hall, 49 ND 11, 186 NW 284. Ruling Case Law (9 RCL 1173) says:

"It is the duty of the courts to uphold the law by sustaining elections thereunder that have resulted in a full and fair expression of the public will, and from the current of authority the following may be stated as the approved rule: All provisions of the election law are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election, all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void." 9 RCL p 1173.

The section of the constitution (Sec. 25) relating to the initiative, referendum, and recall seems to evidence a clear intention that these well settled principles shall apply to an election at which an initiative measure is submitted and is approved by a majority of the votes cast thereon. The section provides: "The Secretary of State shall pass upon each petition, and if he finds it insufficient he shall notify the 'Committee for the Petitioners' and allow twenty days for correction or amendment. All decisions of the Secretary of State in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the Secretary of State shall place the measure on the ballot and no subsequent decision shall invalidate such a measure if it is at such election approved by a majority of the votes cast thereon."

According to the clear language of the provision just quoted, defects in a petition for the initiation of a measure, which would be fatal if the same had been raised by timely objection before the election may no longer be raised after the measure has been

approved at the election. Thus, if an initiative petition is filed which has not been signed by the number of qualified electors which the constitution requires and if timely objection is made to such measure and if the decision of the Secretary of State in regard to such petition has been challenged and brought before the Supreme Court for review and the proceeding for review is pending at the time the ballot is prepared, the Secretary is required to place the measure on the ballot; and even though the court decides, subsequent to the election, that the petition is not sufficient and does not have upon it the required number of qualified signers the measure is not invalidated by such decision if the measure has been approved by a majority of the votes cast thereon at the election. State ex rel. Laird v. Hall, supra.

I am unable to see how the irregularity in the ballot involved in this case prevented a free and intelligent casting of vote upon the proposition submitted or how such irregularity could possibly have affected the result of the election. As the proposition was printed on the ballot, I think it fairly represented the subject matter of the measure to the voters, thus there was a substantial compliance with the constitutional requirement that there must appear upon the ballot a ballot title which shall fairly represent the subject matter of the measure.

The reported decisions of this court show that a number of controversies have arisen in proceedings for the initiation and referendum of measures. This court determined each of these controversies by applying the provisions of the constitution and then existing laws.

The court had no power then, and has no power now, to prescribe rules which might tend to obviate errors in the future and thus "facilitate the operation" of the constitutional provision relating to the initiative and referendum. The court is given no such power. The framers of Section 25 of the Constitution recognized, however, that it might become necessary or at least desirable to prescribe such rules; for, although they provided that "this section shall be self executing," and that "no laws shall be enacted to hamper, restrict or impair the exercise

of the rights reserved to the people," they further provided that "laws may be enacted to facilitate its operation."

MORRIS, J. (dissenting). Section 25 of the North Dakota Constitution was enacted by the People. Through it the people speak as the final authority on questions of legislative power, subject only to the provisions of the Constitution of the United States. "This section shall be self executing and all of its provisions treated as mandatory." It provides for the enactment of legislation through the initiative process, with respect to which it says, "Each petition shall have printed thereon a ballot title, which shall fairly represent the subject matter of the measure, . . . ." It further provides that "All measures submitted to the electors shall be published by the state as follows: 'The Secretary of State shall cause to be printed and mailed to each elector a publicity pamphlet containing a copy of each measure together with its *ballot title, to be submitted at any election.* . . .' ".

The petition under consideration, in compliance with the provisions of Section 25, stated "As such petitioners, we hereby present and propose the following *ballot title* under which said enactment shall be placed, to-wit: AN ACT MAKING IT UNLAWFUL FOR THE STATE OF NORTH DAKOTA, ITS POLITICAL SUBDIVISIONS, COUNTIES, CITIES, VILLAGES AND THE STATE HIGHWAY DEPARTMENT, TO ESTABLISH AND MAINTAIN ANY DEVICES KNOWN AS 'PARKING METERS', OR BY WHATEVER NAME DESIGNATED, REQUIRING THE DEPOSIT OF COINS OR TOKENS THEREIN FOR THE PRIVILEGE OF PARKING CARS OR OTHER VEHICLES UPON THE STREETS AND HIGHWAYS IN THE STATE OF NORTH DAKOTA, AND DECLARING VOID ANY EXISTING ORDINANCE OR RESOLUTION AUTHORIZING THE USE OF SUCH DEVICES."

Chapter 176, SLND 1947 provides, "Each measure initiated by or referred to the electors shall be numbered in the order received and shall be submitted to the electors by number and

*ballot title* and shall be placed upon the ballot by the secretary of state." (Emphasis supplied in these quotations.)

The measure in question was placed on the ballot under the following heading.

## "INITIATED MEASURE

### NO. 2—PROHIBITING PARKING METERS IN POLITICAL SUBDIVISIONS."

The ballot title proposed by the petitioners was omitted. The heading was followed by the full text of the proposed measure as set out in the petition. The printing of this heading is not a substantial compliance with the requirements for printing the ballot title, contained in Section 25 and Chapter 176, SLND 1497. It indicates the prohibition of parking meters only in political subdivisions, while the law also includes the State of North Dakota and the State Highway Department within the terms of its prohibition. It further indicates that parking meters generally, are prohibited while the law affects only coin or token operated meters. Moreover, no reference is made to the provision in the law declaring null and void all ordinances and resolutions authorizing the establishment and maintenance of parking meters. The heading under which the measure was submitted as its ballot title falls far short of substantial compliance in that it does not cover all of the important provisions of the measure which were embraced in the ballot title submitted by the petitioners. It would seem that if the ballot title contained in the petition may be displaced by the meager statement appearing at the top of the ballot in this case, the ballot title could be omitted altogether without affecting the validity of the measure after it had been approved at an election. Thus an important constitutional procedural requirement would be abrogated.

Under the provisions of Section 25 the Secretary of State is required to pass upon the sufficiency of the petition.

"All decisions of the Secretary of State in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the

time the ballot is prepared, the Secretary of State shall place the measure on the ballot and no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon."

From this I draw the conclusion that the framers of Section 25 and the people when they adopted it, had in mind the effect of an election and limited that effect to curing defects in the petition. If it had been intended that failure to follow, substantially, the constitutional mandates regarding the submission of a measure should not invalidate it after election, it would have been easy to so state.

The measure now under consideration is short and comparatively simple in text. The same law applies to all measures regardless of their length. The next case before this court may involve the submission of a long and complicated enactment. We are dealing here with provisions designed to inform and protect the electorate. Judicial construction cannot vary with the length of the measures submitted.

It has also been pointed out that before the election the measure in question was published in the publicity pamphlet. That publication, however, contains the same errors and the same constitutional defects that appeared on the ballot. A defective ballot cannot be cured by a defective publication in the publicity pamphlet.

Larkin v. Gronna, 69 ND 234, 285 NW 59, involved principles similar to those which I have discussed. For a further consideration of those principles and the authority supporting them I refer to my dissenting opinion in that case.

The measure in question was not submitted to the people in substantial compliance with the mandatory provisions of Section 25 of the North Dakota Constitution, and is, therefore, void.