[File No. 6347.]

CASSELTON REPORTER by D. H. Potter and Alida Potter, Co-partners Doing Business Under the Firm Name and Style of Potter & Potter, Owners, Publishers and Printers of The Casselton Reporter and D. H. Potter, an Elector of Cass County, North Dakota, Appellants, v. AN ALLEGED NEWSPAPER CALLED "THE FARGO FORUM" and N. D. Black its Alleged Publisher, The Fargo Forum and Daily Republican, The Fargo Forum and Daily Tribune, and Forum Publishing Company, a Corporation, Respondents.

STATE OF NORTH DAKOTA EX REL. CASSELTON REPORTER, et al., Appellants, v. F. FORD DOHERTY as County Auditor of Cass County, a Political Subdivision of North Dakota, et al., Respondents.

(261 N. W. 549.)

Opinion filed June 17, 1935.

*Nilles, Oehlert & Nilles,* for appellant.

*Lawrence, Murphy, Fuller & Powers,* for respondent.

Morris, J. The record on this appeal presents an election contest and an action to mandamus the county auditor and the canvassing board of Cass county to issue a certificate of election to the "Casselton Reporter." These cases were, by stipulation, consolidated for trial and decision. They arise from the general election of November, 1934. Two names appeared upon the ballots as candidates for official newspaper: "The Fargo Forum" which received 8,969 votes and the "Casselton Reporter" which received 5,539 votes.

Prior to the primary election of June, 1934, the treasurer of the Forum Publishing Company filed with the county auditor of Cass county, an application in writing seeking to place upon the ballot for nomination for official newspaper, "The Fargo Forum and Daily Republican." The Forum Publishing Company also owns and publishes "The Fargo Forum and Daily Tribune." The former is a daily paper published every evening except on Sundays, and the latter is a daily paper published every morning except Mondays. There is no contention that the name "The Fargo Forum" was placed upon the official ballot for the purpose of injuring or deceiving anyone.

The trial court found that the election for official newspaper in Cass county held on November 6th, 1934 was void for the reason that the majority of the votes were cast for "The Fargo Forum" which was not the correct name of "The Fargo Forum and Daily Republican" the newspaper which had made application for nomination prior to the primary election; that the voters did not know that "The Fargo Forum" was not the name of a qualified candidate; that "The Fargo Forum and Daily Republican" had been elected for the term commencing the first Monday in January, 1933, for a period of two years and until a successor had been chosen, and that since no successor had been chosen at the November, 1934 election, "The Fargo Forum and Daily Republican" continued to hold over.

The appellants contend that "The Fargo Forum" is not a newspaper and is a fictitious name and cannot be a legal or actual candidate; that this was a matter of public knowledge and that the votes cast for "The Fargo Forum" should not be counted for any purpose. The appellants

further contend that since under their theory the votes cast for "The Fargo Forum" were not votes at all, that the only votes cast were for the "Casselton Reporter." This is equivalent to asking that we disregard the 8969 votes cast for "The Fargo Forum" and determine the election entirely upon the 5539 votes cast for the "Casselton Reporter."

Sections 3176A2 to 3176A4, Supplement to Compiled Laws, 1913, provide for the selection of official newspapers. Section 3176A3 in part provides: "The newspaper receiving the highest number of votes as determined by the official canvass according to the general provisions of law relating to the canvass of votes at general elections, shall be declared elected the official newspaper until the next biennial election or until a successor is chosen, and the county auditor shall issue a certificate of election to such newspaper receiving the highest number of votes cast at said election."

The authorities generally hold that where a majority of the voters vote for a candidate whose disqualification is unknown, that the minority candidate cannot claim to be elected upon the disqualification of the majority candidate. The appellants would avoid these authorities by contending that in this case the voters are bound by the facts and the law and are assumed to know that "The Fargo Forum" was not the name of a legal or actual candidate. This contention assumes that although the majority of voters actually marked their ballots they nevertheless intended that their votes should not be counted. In other words, they deliberately threw away their votes. In discussing this question this court, in the case of Woll v. Jensen, 36 N. D. 250, 162 N. W. 403, Ann. Cas. 1918B, 982, said: "The weight of American authority, both legislative and judicial, seems to be that no such intention to throw away the vote can be imputed, but that rather the vote for the disqualified candidate must be considered as a protest against the qualified person, and especially should this be the case where there are only two candidates. The authorities lay stress, indeed, upon the proposition that government by the majority seems to be an American maxim, and that no one should be deemed elected against the protest of that majority. It is true that many of the authorities are purely legislative. It is also true that perhaps in no adjudicated case has the question been fairly presented. The DICTA of the courts, however, and the positive rulings of the legislative tribunals, are almost

unanimous on the proposition that, where there is no statute declaring votes cast for ineligible candidates to be absolutely void, no right to the office can be presumed in the defeated candidates."

In the recent case of Derringe v. Donovan, 308 Pa. 469, 162 A. 439, it appears that Flannery, who was a candidate for school director, died six days prior to election. His death was generally known throughout the district. He was one of the candidates receiving a plurality of the votes. Derringe received a minority and contended that the votes for the deceased candidate should not be counted as legal votes, and that Derringe, therefore, was entitled to be declared elected. The court in rejecting his contention said: "This conclusion is based on a premise that is palpably opposed to fact. It is absurd to hold that the 1921 voters who voted for Flannery meant to 'throw their votes away,' or meant that their votes for Flannery would be ineffective for any purpose."

The court also said: "The casting of a ballot is only a legal expression of the voters' will as to the men or measures voted upon, and it is a fundamental principle of popular government that in elections the will of the majority shall prevail, and, when it becomes impracticable by reason of the large number of candidates for a certain office to ascertain the will of the majority, the will of the plurality shall prevail. In 20 C. J. at p. 207, § 267, is this expression: 'It is a fundamental idea in all republican forms of government that no one can be declared elected and no measure can be declared carried, unless he or it receives a majority or a plurality of the legal votes cast in the election.' "

The appellant cites the case of State ex rel. Bancroft v. Frear, 144 Wis. 79, 128 N. W. 1068, 140 Am. St. Rep. 992, which holds that votes *knowingly* cast for a candidate who cannot possibly exercise the functions of the office if elected, are thrown away. This rule has been recognized by many courts. It is applied as an exception to the general rule that a candidate cannot be elected to an office unless he receives a majority or a plurality of the votes cast for that office. Even where the courts recognize this exception, there is no presumption of either fact or law that the voter knowingly cast his vote for an ineligible candidate. The People ex rel. Furman v. Clute, 50 N. Y. 451, 10 Am. Rep. 508. Where the evidence fails to show that the voters know of the ineligibility, the candidate receiving the next highest vote to that of the

ineligible candidate is not elected. Fields v. Nicholson, 197 Ind. 161, 150 N. E. 53.

The Supreme Court of the State of Wisconsin in the case of State ex rel. La Follette v. Kohler, 200 Wis. 518, 228 N. W. 895, 69 A.L.R. 348, cites State ex rel. Bancroft v. Frear, supra, and says: "An ineligible candidate could not be elected because the Constitution or the law said he could not be. His opponent could not be declared elected because he had not received the necessary plurality and in such case it is universally held that there was no election and the election is void. There is one apparent, *not real,* exception, and that is where the electors knowingly vote for a person who is disqualified. Knowing of the disqualifications, their votes are said to be worthless and not to be counted, and the opposing candidate may be declared elected."

The trial court in his memorandum opinion states: "The fact cannot be ignored that "The Fargo Forum" is the popular name, and the name generally known, of a newspaper published in Fargo, which newspaper has one of the largest if not the largest, circulation in the State of North Dakota. On the front page of said paper appears the words, "The Fargo Forum" in large and conspicuous type, and the additional part of the name, "and Daily Republican," and "and Daily Tribune," are printed in small and inconspicuous type, and are not noticed by the great majority of the subscribers and readers of said newspapers. On the inside and on the other sheets of each issue of said newspaper there appears at the top in large type the words "The Fargo Forum." By the vast majority of the readers and subscribers of "The Fargo Forum and Daily Republican," and "The Fargo Forum and Daily Tribune," the distinction between the two papers is usually made by referring to them as the morning edition or the evening edition of the Fargo Forum. The voters of Cass county who placed a cross after the name "The Fargo Forum," undoubtedly believed that they were voting for an existing newspaper published in that county,—a newspaper having a large circulation, and a newspaper which, on account of its large circulation, would give the widest publicity to all legal matters and notices published therein. It cannot be held that the electors who voted for the Fargo Forum intended to throw their votes away."

In this case, application was made to place the name of "The Fargo Forum and Daily Republican" upon the ballot at the primary election.

Through some oversight a part of the name was left off and only "The Fargo Forum" appeared upon the ballots of both the primary and general elections. The appellant had no plurality of votes. It did not receive "the highest number of votes." To hold that the "Casselton Reporter" was elected would be to substitute the result of error for the choice of the majority, and to permit the election to be determined by accident rather than by the intent of the voters. We will not presume that 8969 voters, who constituted the majority, by marking their ballots for "The Fargo Forum," intended to throw their votes away. Even though the vote thus cast cannot be considered effectual for the purpose of electing "The Fargo Forum," nevertheless, the majority vote is effective to prevent the election of the newspaper receiving the minority vote. No official newspaper for Cass county was chosen at the November, 1934 election.

The judgment appealed from is affirmed.

BURKE, Ch. J., and NUESSLE and CHRISTIANSON, JJ., concur.

BURR, J. I agree with the result, but consider the decision should be that the Forum was in fact elected—the Forum that filed for the election. The people knew what they were doing.