E. L. KINER, Sr., Herman Mosolf, A. W. McDonald, Ralph M. Smith, and Melvin Juhl, Plaintiffs and Appellants,

v.

Alice WELL, County Superintendent of Schools of Pembina County, Defendant and Respondent.

No. 7512.

Supreme Court of North Dakota.

Aug. 26, 1955.

Day, Stokes, Vaaler & Gillig, Grand Forks, for plaintiffs and appellants.

Fred. S. Snowfield, Cavalier, for defendant and respondent.

JOHNSON, Judge.

This is an action for injunction. It involves the reorganization of six school districts. It is brought by E. L. Kiner, a taxpayer and resident of Murphy School District No. 71, by Herman Mosolf, a taxpayer and resident of Mugford School District No. 93, by A. W. McDonald, as a taxpayer and resident of School District No. 16, and by Ralph M. Smith and Melvin Juhl, as taxpayers and residents of Wilson School District No. 15, all in Pembina County, North Dakota. They question the validity of an election held on the 19th day of February, 1951, at Bowesmont in School District No. 74, involving a proposed reorganization of the school districts mentioned into a new school district to be known as Bowesmont School District. They pray that the election be declared invalid, void and of no effect, and also that the defendant, the County Superintendent of Schools of Pembina County, be permanently enjoined from doing any act pursuant to the election in connection with the new school district consisting of the adjustment of property assets, debts and liabilities or from taking any steps to organize and establish such district, or doing any act in connection therewith.

The election was held pursuant to Chapter 15–53, NDRC 1949 Supp., entitled, "Act to provide for the reorganization of school districts".

The amended complaint sets forth that the election was called by the County Superintendent of Pembina County for the purpose of approving or rejecting the proposal for the formation of a school district to be known and bear the name of "Bowesmont School District." The complaint sets forth the notice of the special election as published, as follows:

"Notice is hereby given that a Special School Election will be held on Monday the 19th day of February, 1951, at the polling place hereinafter specified and within the proposed Reorganized School District hereinafter named and described.

"Said Special School Election is for the purpose of approving or rejecting a proposal for the formation of a new school district to be known as, and bear the name of Bowesmont School District, with the following boundaries, and to include the present entire districts of Murphy No. 71, District No. 16, Wilson No. 15, Mugford No. 93, Lincoln No. 12 and Bowesmont No. 74, all in Pembina County, the legal description of all lands comprising said proposed new school district being as follows: Namely, all of Lincoln Township, including Bowesmont, except Sections 19, 20, 21, 28, 29, 30, 31, 32 and 33 in Township 160, Range 51, and all of South Joliette Township except Sections 4, 5, 6, 7, 8, 9, 16, 17 and 18 in Township 161, Range 51, together with all railroad and other property located within said boundaries, all in said Pembina County;

"Providing, in the formation of said Bowesmont School District, as above described, that in the adjustment of assets and liabilities between present established school districts and the proposed new district, any and all cash balances in or available to the treasury of any old district included in the proposed new district, are to be transferred to and become one property of said proposed new school district; that the real estate, buildings, equipment and other school property of said old districts are to become the property and assets of the proposed new district, and that debts and liabilities of said old districts are to become debts and liabilities of said proposed new district;

"Provided, Further, That said proposed new district shall be a common school district, having a School Board composed of five directors to be elected from designated geographic areas, as

follows: One director from the rural geographic area now comprising Wilson District No. 15; one from Mugford No. 93; one from Lincoln No. 12; one from Bowesmont No. 74 and one from the area now comprising districts No. 16 and Murphy No. 71.

"The polling place established for said election is at the Community Hall in Bowesmont, in District No. 74, for all electors of said entire proposed district.

"Polls will be opened at 11:00 A.M. and closed at 7:00 P.M. of that day.

"Dated at Cavalier, North Dakota this 2nd day of January, 1951."

It is then alleged that the election was held on the 19th day of February, 1951, and ballots were presented which did not conform to the notice of the special election in that they did not except Murphy School District No. 71, consisting of Sections 4, 5, 6, 7, 8, 9, 16, 17 and 18 in Township 161, Range 51, but included the same contrary to the notice; that the ballot included property that was not described in the notice of the special election, as follows: "Sections 1, 2, 11, 12, 13 and 14 of North Midland Township 160, Range 52"; that the ballot used in the election read as follows:

"Shall a new School District be formed to be known as, and bear the name of Bowesmont School District, with the following boundaries, and to include the present entire districts of Murphy No. 71, District No. 16, Wilson No. 15, Mugford No. 93, Lincoln No. 12 and Bowesmont No. 74, all in Pembina County, the legal description of all lands comprising said proposed new school district being as follows, namely:

"All of Lincoln Township including Bowesmont, except Sections 19, 20, 21, 28, 29, 30, 31, 32 and 33 in Township 160, Range 51; all of South Joliette Township in Township 161, Range 51 and Sections 1, 2, 11, 12, 13, and 14 of

North Midland Township in Township 160, Range 52, together with all railroad and other property located within said boundaries, all in said Pembina County:

"Providing, in the formation of said Bowesmont School District, as above described, that in the adjustment of assets and liabilities between present established school districts and the proposed new district, any and all cash balances in or available to the treasury of any old district included in the proposed new district, are to be transferred to and become the property of said proposed new school district; that the real estate, buildings, equipment and other school property of said old districts are to become the property and assets of the proposed new district, and that debts and liabilities of said old districts are to become debts and liabilities of said proposed new district;

"Provided Further, That said proposed new district shall be a Common School District, having a School Board composed of five directors to be elected from designated geographic areas, as follows: one director from the rural geographic area now comprising Wilson District No. 15; one from Mugford No. 93; one from Lincoln No. 12; one from Bowesmont No. 74; and one from the area now comprising districts No. 16 and Murphy No. 71?"

It is also alleged that the errors in the notice of the special election prejudiced the voters; that voters did not attend the election who would have voted against the proposition, which would have changed the results of the election; that many voters who did not attend the election and vote were confused as to the legal significance of their ballot and the results of the election; that their votes as cast were not as intended; that the notice of election was not given as required by law to the voters residing in the territory included in the ballot, and voters were misled thereby and prevented a free and intelligent vote; that the plaintiffs were prejudiced by the failure

of the notice to comply with the statutory requirements in stating the terms of adjustment of property, debts and liabilities, said statement being only in general terms as indicated in the notice and not as required by law; that necessary committees were not appointed and organized; that the duties and functions of the necessary committees were not performed as required; that necessary meetings were not held nor were notices given as required by law; that the necessary steps prior to the election were not performed; that the plaintiffs were prejudiced thereby, and that the subsequent election was without jurisdiction and void. It is further alleged that the notice of the special election did not conform to Section 15–5318, NDRC 1949 Supp. in that it did not contain a description of the boundaries of the proposed new district and that as a result the election was void; that the election was also invalid as the village of Bowesmont voted as a unit with the rural area. It is further alleged that the election was invalid in that the same attempted to place before the voters two distinct or a double proposition, in that the ballot included the following:

"Provided, Further, That said proposed new district shall be a Common School District, having a School Board composed of five directors to be elected from designated geographic areas, as follows: one director from the rural geographic area now comprising Wilson District No. 15; one from Mugford, No. 93; one from Lincoln No. 12; one from Bowesmont No. 74, and one from the area now comprising districts No. 16 and Murphy No. 71."

It is also alleged that pursuant to the results of the special election, the county superintendent will, unless enjoined, proceed to make adjustment of property assets, debts and liabilities and organize and establish the new district to the detriment of the plaintiffs and all interested parties and that the defendant will call a special election for the purpose of electing directors for said school district and perform other duties and expend moneys of the plaintiffs and other interested parties; that the plaintiffs have no plain, adequate or speedy remedy at law, and that they will be without relief unless granted the relief requested in the complaint by way of an injunction.

The defendant answers generally and specifically denying the allegations of the complaint and asserting that no prejudice was created by the discrepancy occurring in the description of the areas and the boundaries of the newly proposed district as between the notice of the special election and the ballot, and further contending that the proceedings taken for the reorganization of the school district were all in accordance with substantial compliance required by the reorganization law and asks for a dismissal of the action.

The action was heard by the district court of Pembina County and a judgment was rendered dismissing the action and dissolving a temporary restraining order. The plaintiffs have appealed and demanded a trial de novo.

As will be noted from the pleadings, the reorganization plan under the act consisted of six old school districts in the south-central part of Pembina County, North Dakota. The area proposed to be organized into a new school district included *all* of the following districts: Murphy No. 71; District No. 15; District No. 16; Mugford No. 93; Lincoln No. 12, and Bowesmont No. 74. The proposed plan for the reorganization of the six school districts mentioned was considered at a meeting that took place on October 3, 1950. About forty-five persons were present. All districts except No. 16 were represented. After some discussion of the proposed plan for the reorganization of the Bowesmont School District, on motion, the plan as proposed was approved by a vote of 21 in favor and 3 opposed. Final action on the petition, however, was deferred until a later date.

On October 25, 1950, the county committee of Pembina County met for the purpose of taking official action on the pro-

posed plan for the reorganization of Bowesmont School District which had been under discussion at the meeting on the 3rd day of October. At the October 25th meeting official action on the result of the reorganization hearing held on October 3rd was taken. A plan was drawn up for the formation of a new school district to be known as the Bowesmont School District, and was approved by unanimous vote of the Pembina County school reorganization committee. This plan provided for the adjustment of assets and liabilities between the old districts and the new district, and also proposed that the new district should be a common school district with five directors. The plan as proposed and approved by the county committee was submitted to the state committee and approved by it on November 3, 1950.

A special election was called for the purpose of "approving or rejecting the proposed new school district", on the 19th day of February, 1951. At that election 155 votes were cast, of which a total of 97 were in favor of the reorganization of the new Bowesmont School District and 58 against. The judges of the election declared the reorganization carried for the formation of the new district.

On the 25th day of May, 1951, 95 days after the election approving the formation of the new Bowesmont School District, the plaintiffs commenced this action. On the 31st day of May, 1951, a temporary restraining order was issued and an order to show cause calling for a hearing thereon on the 12th day of June, 1951, at 2 o'clock in the city of Cavalier, North Dakota. The defendant demurred to the complaint alleging that it did not state facts sufficient to constitute a cause of action. After hearing on the demurrer and on September 10, 1951, it was sustained. The plaintiffs were given fifteen days in which to amend the complaint. They served an amended complaint and answer was interposed. The trial in district court took place on the 26th day of May, 1953. No testimony on the merits was submitted except as disclosed by the written records of the county com-

mittee. The district court dismissed the action of the plaintiffs, and judgment was entered on the 30th day of April, 1954. Notice of entry of judgment was served on the 3rd day of May, 1954. On the 31st day of August, 1954, notice of appeal was served upon the attorney for the defendant. No stay of execution was obtained.

The plaintiffs and appellants base their argument on three main points:

1. That the counting of the votes of both the town of Bowesmont and the rural area as a unit for or against the proposed establishment of a new school district violated the spirit and intention of the reorganization law.

2. That errors appeared in the election procedure which violated and made void the election.

3. That there was no substantial compliance with the reorganization act.

Section 15–5318 of the NDRC 1949 Supp., being the statute in force at the time of the special election held in Pembina County concerning the reorganization of the Bowesmont School District, provided in part as follows:

"Any territory within the proposed new district consisting of *one or more incorporated villages or cities* shall vote as a unit, and all *rural territory* within such proposed new district shall vote as a unit. For the purpose of this section all *incorporated areas* in the proposed new districts, regardless of their number and size, shall be considered as one *incorporated area*, and all rural areas in the proposed new district, regardless of size, shall be considered as one *rural area.* * * *". (Emphasis supplied.)

The town of Bowesmont was located in the area of Lincoln Township. It had no separate government from that of the township and as far as the record shows is an unincorporated town. It must be presumed that at the time of the enactment of this statute, the legislature was cognizant

of the common, ordinary meaning attached to the word "incorporated."

"Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in this code are to be understood as thus explained." Section 1-0202, NDRC 1943.

■ Public corporations, under our law, include a county, city, village, township, school district, and any body corporate except a private corporation. Section 21-0401, NDRC 1943. A public corporation is one created by the state for political purposes and to act as an agency in the administration of civil government, generally within a particular territory or subdivision of the state, and usually invested, for that purpose, with subordinate and local powers of legislation; such as the county, city, town or school district. Webster's New International Dictionary, 1955 Edition, defines the word "incorporate" as follows: "To form into a legal body, or body politic; to constitute into a corporation recognized by law, with special functions, rights, duties, and liabilities."

■ Incorporation is a term used to describe results of an entire course of legal proceeding whereby a municipality is brought into existence by a special legislative act or by proceedings and organization under general law or by adopting home-rule charter under constitutional provisions. City of Sherman v. Municipal Gas Co., 133 Tex. 324, 127 S.W.2d 193, 195.

■ Under our statutes, certain legal procedure is necessary to create a village, city, township, county or school district. Unless a village has been created as provided by statute, and the necessary steps required thereby taken, the town is not an incorporated village in the sense used in the school reorganization statute. We hold that the town of Bowesmont was a rural area and does not come within the word "incorporated" as used in the reorganization law. It was, therefore, proper to count the votes cast in the special election held on February 19, 1951, as one unit.

The most serious question presented in this action is the variation between the description of the area of the established school districts to comprise the new district, as set out in the notice of the special election, and the description thereof, as set out in the ballot. The map in evidence and the ballot correctly describe the area to be reorganized into the Bowesmont School District.

It is noted that both the posted and the published notice of the election excluded from the area Sections 4, 5, 6, 7, 8, 9, 16, 17, and 18 of South Joliette Township 161, Range 51. This is the area that comprises Murphy School District No. 71. This area was to be included in the reorganization of the new school district and should have been included in the notice of election. The notice, however, is correct insofar as it refers to Murphy School District No. 71. All the districts involved in the reorganization are correctly described in the notice by name and number.

The question presented here is whether the omission of the area mentioned in the notice is of such a nature as to require the invalidation of the election. There is no evidence showing that any voter was misled, confused or prejudiced by the description error contained in the notice of the special election. Nor was any evidence presented by the plaintiffs or by any elector in the area omitted from the notice indicating that the voters within that area, which should have been included in the notice, did not avail themselves of the opportunity to vote upon the question.

It is also contended that the failure to describe, in both the posted and published notice of the election, Sections 1, 2, 11, 12, 13, and 14 of Midland Township is another reason why the election is invalid. This discrepancy in the notice does not appear to be serious. Both the notice and the ballot specifically state that *all* of Mugford School District No. 93 was a part of the newly proposed school district. Reference to the map discloses that Mugford School

District No. 93 is partly located in Midland Township and partly in Lincoln Township. The sections omitted by specific reference were that part of the area of Mugford School District No. 93 which is located in Midland Township. No evidence was introduced to show that either the plaintiffs or anyone else was prejudiced or prevented from intelligently casting his vote at the special election by reason of this error. The record is silent as to whether or not the people within the area which should have been included in the notice voted or failed to do so.

"It is equally clear in the case of special elections wherein the necessity for notice is so much more urgent that the rule as to compliance with statutory requirements in the giving of notice should be much more strictly enforced. Considerable liberality is, however, allowed even in these elections and it is a rule of pronounced authority that the particular form and manner pointed out by a statute for giving notice is not essential, provided, however, there has been a substantial compliance with statutory provisions. Following this rule, it has been held that where the great body of the electors has actual notice of the time and place of holding the election and the question submitted, the requirement as to notice is satisfied. Thus, the formalities of giving notice, although prescribed by statute, are frequently considered directory merely in absence of an express declaration that the election shall be void unless the formalities are observed." 18 Am.Jur., Elections, Sec. 110, p. 248.

Since the courts hesitate to disfranchise even the few, there is greater reason, then, for reluctance in setting aside the expressed will of all by the declaration that a whole election is invalid. Hence we find the rule of law to be that generally where the statute does not in express terms declare that the election shall be void or by reasonable inference, invalidate the election, the election will be sustained and the violation of statutes will be treated as an irregularity, going to the form, rather than to the substance where, from all of the facts, the court does conclude that despite the departure from the statutory requirements a full and fair ballot has been cast and a true and fair return of the entire election has been canvassed and made. Kerlin v. Devils Lake, 25 N.D. 207, 141 N.W. 756.

There is no express declaration in the school district reorganization act or otherwise that an election shall be void unless all formalities of the statutes are strictly observed.

"We believe the general rule with respect to elections is as stated in Jones v. State, 153 Ind. 440, 55 N.E. 229, 233:

" 'All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.'

"See also City of Jackson v. Nims, 316 Mich. 694, 26 N.W.2d 569; Kiernan v. City of Portland, 57 Or. 454, 111 P. 379, 112 P. 402, 37 L.R.A.,N.S., 332; 28 Am.Juris. 162; 20 C.J. 181, Sec. 223 et seq., 29 C.J.S., Elections, § 214. The reason behind this rule is that the will of the people freely and intelligently expressed ought not to be defeated because of the mistake of an officer or of any technical fault." City of Fargo v. Sathre, 76 N.D. 341, 36 N.W.2d 39, 47 and 48.

There is no charge that there was any fraud or irregularity in the conduct of the election itself, nor that a fair and full expression of the public will was prevented by reason of anything that was done or

omitted, except the mere assertion by the plaintiffs, unsupported by any testimony, that they and other parties were prejudiced, by the discrepancies occurring in the notice of the special election in the description of the boundaries of the district and by the further contention that they were confused and misled thereby and that the voters were prevented from a free and intelligent expression of their will. In the case of State ex rel. Laird v. Hall, 49 N.D. 11, 186 N.W. 284, 289, Judge Christianson in a concurring opinion said:

> "There is no charge here that there was any fraud or irregularity in the conduct of the election itself, or that a fair and full expression of the public will was prevented by reason of anything that was done or omitted. Nor is there any charge that the winning candidates were in any manner responsible for the acts complained of with respect to the recall petitions. The contention is merely that the petitions were not sufficient, and that the determination of the Secretary of State that they were sufficient, is erroneous, and that the election should not have been called. For the reasons stated, I am satisfied that that question may not be raised, and is not one for judicial investigation after an election has been held."

The mere assertion by the plaintiffs of prejudice is insufficient. No proof thereof exists.

Our court has clearly indicated in the case of Anderson v. Peterson, 78 N.D. 949, 54 N.W.2d 542, 556 that the school district reorganization act should be liberally construed. That case says:

> "The defendants have shown a sufficiently strict compliance with the election statute so that the district court would not have been justified in enjoining the election before it was held on these grounds. Much less can the election be set aside on such grounds after it has been held. Only substantial compliance with the law is then required. See State v. Langlie, 5 N.D.

594, at page 599, 67 N.W. 958, 32 L.R. A. 723; Casselton Reporter v. The Fargo Forum, 65 N.D. 681, 261 N.W. 549; Groom v. Port of Bellingham, 189 Wash. 445, 65 P.2d 1060; Stroud v. McCallen, 386 Ill. 103, 53 N.E.2d 422; 29 C.J.S., Elections, § 81, p. 106; 18 Am.Jur., Elections, Sec. 110, p. 248."

"A majority of electors in the territory involved has an absolute right to organize into a single district provided the territory sought to be consolidated is such as the statute contemplates. Court will go no further than to see that the methods pursued are in substantial accord with those prescribed by statute. State [ex rel. Ondler] v. Rowe, 187 Iowa 1116, 1123, 175 N.W. 32, 34. To adopt the language of the Rowe case, '* * * if such perfection of proceedings is to be demanded of them, few, if any, organizations of school districts could successfully withstand attacks at the hands of discordant and contentious minorities. The courts very properly * * * go to the limit of liberality in giving effect to the voice of a majority wherever it can reasonably be done without violence to the manifest spirit and intent of the Legislature.'" Zilske v. Albers, 238 Iowa 1050, 29 N.W.2d 189, 192.

Irregularities which do not deprive any voter of a fair chance to register his will, or which do not prevent will of the voters from being fairly and truly ascertained and declared, do not vitiate a school election to determine the question of consolidation. Viktora v. Cressman, 41 S.D. 159, 169 N.W. 551, 553. In that case the court said:

> "There is absolutely nothing in the record to show but that the election was fairly and honestly conducted, and, even if there was anything that could be deemed an irregularity, there is nothing from which it could be inferred that it deprived any voter of a fair chance to register his will in relation to the issue before the voters, or from which it could be inferred that

the will of the voters was not fairly and truly ascertained and declared. Certainly, under those circumstances, the trial court did not err in its judgment. 15 Cyc. 372."

■ We will not, nor may we assume or infer that, in absence of evidence thereof, the irregularities complained of were such as to create prejudice to the plaintiffs or other electors in the area of the proposed new school district.

Recent holdings of other courts where similar or analogous situations have been involved are in accord with this conclusion. Carnes v. Livingston County Board of Education, 341 Mich. 600, 67 N.W.2d 795, held that an election which is passed will not be declared void because particular detail of law relative to notice has not been strictly observed, in absence of any showing that any elector was thereby deprived of his right to vote or in any way misled, or that the result was affected by the complained of irregularities. State ex rel. Burnquist v. Independent Consolidated School District, Minn., 65 N.W.2d 117; Erickson v. Sammons, Minn., 65 N.W.2d 198. See also Edwards v. Union High School Dist. No. 8, 198 Or. 611, 258 P.2d 148.

The map showing the boundaries of the proposed Bowesmont School District indicates that the territory therein was to include all of Lincoln Township, including Bowesmont, except Sections 19, 20, 21, 28, 29, 30, 31, 32 and 33, Township 160, Range 51; all of South Joliette Township 161, Range 51, and Sections 1, 2, 11, 12, 13, and 14 of North Midland Township 160, Range 52, together with all railroad and other property located within the boundaries, all in Pembina County, North Dakota. This was the area that was to be included in the proposed Bowesmont School District and to be approved or rejected at the special election.

■ The appellants insist that the boundaries of the district were not properly set out. The statute does not set forth how the boundaries of a proposed new district shall be determined. It merely states "and shall also contain a description of the boundaries of the proposed new district." A description of the area will result in the determination of the boundary of the same. Here the area was given rather than the boundaries. The map showing the area is correct. Any elector confused by the notice had the means of ascertaining the exact boundaries and area involved. An examination of the records of the Pembina County School Reorganization Committee would have disclosed the same.

"A notice of the proposed creation of a new district out of territory to be taken from existing districts is sufficient where it describes the territory to be taken, although it does not further describe the boundaries of the district proposed to be created." 78 C.J.S., Schools and School-Districts, § 38, p. 711.

■ It is asserted that the Pembina County Committee was never legally appointed and that there was not sufficient compliance with Section 15–5313, NDRC 1949 Supp. We have carefully considered all of the evidence submitted with reference to the appointment of a county committee and conclude that there was substantial compliance with the requisites of the law in the creation of the county committee. Section 15–5306, NDRC 1949 Supp.

The same may be said with reference to the requirements of Section 15–5313, NDRC 1949 Supp. Public hearings on the proposal for the reorganization of Bowesmont School District were held. Notice of such hearing was published in the official paper more than ten days prior to the date of the hearing. Testimony was taken and terms of the adjustment of property, debts and liabilities among the districts involved, were discussed and approved and the plan was submitted to the state committee and approved by it. Both the notice of the election and the ballot provided that all of the assets of the districts which were to comprise the new district should become the assets and property of the new district and they further provided that the new district should assume all of the debts, and

liabilities and obligations of each and all of the old districts that were to comprise the new district. If all of the assets of all the districts out of which the new district was to be formed were to become the assets of the new district, there was just as much an adjustment of the assets as if the assets of each district had been separately appraised, listed and set forth in some formal agreement and the same is true with reference to the liabilities and the obligations of the old districts out of which the new district was to be formed. If the new district assumed as its debts and obligations all of the liabilities of the old districts, nothing more could have been accomplished if the debts and liabilities, if any, of each district, had been separately listed.

█ The contention that the voters were voting on two distinct propositions is without merit. That portion of the notice of the election which dealt with the areas from which the five directors of the proposed new school district were to be elected was mere surplusage. It was not required by the statute, Section 15-5318, NDRC 1949 Supp.

"The mere fact that the proclamation or notice contains recitals with respect to matters which are not required to be stated therein will not render it invalid where its efficacy is not thereby impaired and the electorate is not misled." 18 Am.Jur. Elections, Sec. 110, p. 249; Allison v. Phoenix, 44 Ariz. 66, 33 P.2d 927, 93 A.L.R. 354; State ex rel. Utah Savings & Trust Co. v. Salt Lake City, 35 Utah 25, 99 P. 255, 18 Ann.Cas. 1130; Wisconsin Gas & E. Co. v. Ft. Atkinson, 193 Wis. 232, 213 N.W. 873, 52 A.L.R. 1033; Annotation, 93 A.L.R. 362.

It follows that the error in making such recitals will be treated as being immaterial where they did not mislead the electors. In re Cleveland, 52 N.J.L. 188, 19 A. 17, 20 A. 37, 7 L.R.A. 431.

While the record does disclose a failure to comply with the strict and literal provisions of the school district reorganization act in connection with the reorganization of the new Bowesmont School District, the detailed procedure indicates an honest and a substantial compliance therewith, which, after the election, constitutes substantial compliance with the statutes, in absence of proof that the electorate was misled by the errors involved, or that the deviations from the requirements of the statutes prevented the electors from intelligently expressing their will. We reach the conclusion that there has been no such deviation from the statutes, when all of the facts and circumstances are considered, as to render the creation of the new Bowesmont School District illegal, invalid and void.

The judgment of the trial court is affirmed and the action of the plaintiffs dismissed.

BURKE, C. J., and SATHRE, MORRIS and GRIMSON, JJ., concur.