Marvin NORDBY, on behalf of himself and on behalf of all others similarly situated, Plaintiffs and Appellants,

v.

Bernard DOLAN, Mrs. Borghild Peterson, Walter Enger, Melvin Kjosen, A. J. Lee, Cleve Hauglie, Osborn Lorentzen, as the School Board of White Earth Special School District No. 23, Defendants and Respondents.

No. 7559.

Supreme Court of North Dakota.

Sept. 26, 1956.

Ella Van Berkom, Minot, for appellants.

Swendseid & Bekken, Stanley, for respondents.

SATHRE, Justice.

This is an action brought by the plaintiff in his own behalf as a taxpayer and all others similarly situated, against the defendants as the School Board of White Earth Special School District No. 23, Mountrail County. The purpose of the action is to enjoin the School Board from issuing and selling bonds of said Special School District in the sum of $42,158 the proceeds of which the School Board proposes to use for building a gymnasium and additional classrooms.

White Earth Special School District consists of White Earth Township, Sorkness Township and the Village of White Earth.

On June 2, 1953 an election was held on the question whether the debt limit of the

school district should be increased from 5% to 10% of the taxable valuation of the district. The election carried by more than the required majority. Plaintiff's exhibit 10, is the certificate of the county auditor of Mountrail County, certifying that 50% of the taxable valuation of the school district was $445,453 for the year 1954.

At a regular meeting of the School Board held on the 10th day of November 1953 a resolution was adopted stating that it was deemed advisable by the board that bonds of the school district in the sum of $42,158 be issued for the purpose of providing funds for additional class rooms and gymnasium to the present school plant. The resolution set forth that the assessed valuation of the school district was $445,453 the same being 50% of the actual valuation of all the taxable property of the district. At the same meeting a second resolution was adopted providing that the question whether said initial resolution should be approved be submitted to the qualified voters of the school district and that an election be held for that purpose on the 14th day of December 1953. Notice of election was posted and published as provided by law. A copy of the second resolution was set forth in the notice of election stating the assessed valuation of the school district and the total amount of the bonds proposed to be issued.

The election was held on December 14, 1953, and the canvas of the vote as certified by the clerk of the school district shows that the bond issue carried by more than the 66 and ⅔ per cent vote required by statute.

The complaint of the plaintiffs alleges that the election on the bond issue was void for the reason that such proposed bond issue was not submitted to the board of budget review.

The village of White Earth is a part of White Earth Special School District, but said village had no board of budget review at the time the school board called the elec-

tion on the proposed bond issue. For that reason the bond issue was not submitted to a board of budget review.

In their answer the defendants admit that they are the directors of the school board of White Earth Special School District, that proceedings were had for submission to the voters of the bond issue in the sum of $42,158; that the same was not submitted to a board of budget review; that the proposed bond issue was submitted to the electors at an election called for that purpose on December 14, 1953, and that the same was approved by more than 66 and ⅔ per cent of votes cast at said election. They deny specifically however that the election was illegal and contend that the same was in all things regular and valid. The action was tried in the district court, fifth judicial district, Mountrail County to the court without a jury. The court found for the defendants and held that the election was regular and valid. The plaintiffs appealed and demanded a trial de novo in this court.

The plaintiffs rely upon Sections 40–4106 and 40–4107, NDRC 1943 as supporting their contention that the election was invalid. These sections are as follows:

Section 40–4106:

"Before being submitted to a vote of the electors, all proposed bond issues of the municipality, school district, or park district, except those specifically excepted by law, shall be submitted to the board of budget review for approval, disapproval, or modification. If any proposed bond issue is disapproved by the board of budget review, it shall not be submitted to the voters unless the governing body of the taxing district is requested to do so by a petition signed by not less than twenty-five per cent of the electors of the district as determined by the vote cast at the last general election for all candidates for the office of governor."

Section 40-4107:

"The board of budget review shall allow a public hearing on each preliminary budget and on each proposed bond issue submitted to it for review. Public notice of the time and the place of any such hearing shall be given by the board. The board shall keep a record of all of its proceedings, and such record shall be preserved in the office of the city auditor or village clerk and shall be open to the inspection of the taxpayers of the municipality. The expenses of such board shall be paid by the municipality."

It is established by the record that all of the proceedings had by the school board of White Earth Special School District in connection with the proposed bond issue were in full compliance with all statutory requirements except that the proposed bond issue was not submitted to a board of budget review.

Under the provisions of Section 40-4106 supra, the school board would be required to call an election on a proposed bond issue, notwithstanding disapproval by a board of budget review, if petitioned by 25 per cent of the electors of the district. Such petition was not presented to the school board, but an election was nevertheless held and the proposed bond issue was approved by 66 and ⅔ per cent of the qualified electors of the district and voting at said election. The total vote cast at the election was 162. There were 110 votes in favor of the bond issue and 52 votes against it. At the election held on June 2, 1953 on the question of raising the debt limit from 5 per cent to 10 per cent the total vote cast was 49. There were more than three times as many votes cast at the election on the bond issue. The larger vote cast at the bond election would indicate that the voters were well informed as to the question submitted at the election.

The plaintiffs took no action challenging the validity of the proceedings had by the school board in the matter of the proposed bond issue until after it was approved by the electors at the election held on December 14, 1953.

■ The question presented by the facts and circumstances in the instant case is therefore, whether submission of the proposed bond issue to a board of budget review was mandatory or directory.

In 29 C.J.S., Elections, § 81, p. 106, it is stated:

"Constitutional and legislative provisions designed to secure the freedom of the voters, and security and purity of the ballot, and the certainty of the result should not be entirely ignored. Statutes providing that laws as to elections shall be construed so as to give effect to the will of the electors, notwithstanding informality or failure to comply with some of their provisions, afford no excuse for the nonperformance of prescribed official duty, and apply only after the holding of the election and the will of the electors has been manifested. In general if there is substantial compliance with the statutes regulating elections the election is valid."

And in the case of City of Fargo v. Sathre, 76 N.D. 341, 36 N.W.2d 39, 47, this court said:

"We believe the general rule with respect to elections is as stated in Jones v. State [ex rel. Wilson], 153 Ind. 440 [441], 55 N.E. 229, 233: 'All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless

it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.'

"See also City of Jackson v. Nims, 316 Mich. 694, 26 N.W.2d 569; Kiernan v. City of Portland, 57 Or. 454, 111 P. 379, 112 P. 402, 37 L.R.A.,N.S., 332; 28 Am.Juris. 162; 20 C.J. 181, Sec. 223 et seq., 29 C.J.S., § 214. The reason behind this rule is that the will of the people freely and intelligently expressed ought not to be defeated because of the mistake of an officer or of any technical fault."

The same rule was applied in the case of Neal v. Board of Supervisors, 243 Iowa 723, 53 N.W.2d 147, 150. We quote from the opinion:

"There is a distinct difference in whether the action assailing the election is brought prior to or subsequent to, the holding of the same. We have held that the statutory directions as to time and manner of giving notice of an election are mandatory and will be strictly upheld where the action is brought prior thereto. If, however, the action is brought after the election has been held, a substantial compliance with the statute is sufficient. Dishon v. Smith, 10 Iowa 212; Knorr v. Beardsley, 240 Iowa 828, 38 N.W.2d 236. A reason for this is that there has intervened an expression of the sovereign will, and where such will is fairly expressed it becomes the duty of the courts to sustain such expression where it can be done by a liberal construction of the laws relating thereto. State ex rel. McNeill v. Long, 178 Okl. 409, 63 P.2d 60. See also 29 C.J.S., Elections, § 81; Annotations, 119 A.L.R. 656."

It is significant that under the provisions of Section 40–4106 supra, that upon petition of 25 per cent of the voters of the district the school board would be required to submit the proposed bond issue to a vote of the electors, even though it had been disapproved by a budget board of review.

The complaint does not allege and there is no evidence in the record that a single voter was in any way misled or deprived of any right by reason of the fact that the bond issue was not submitted to a board of budget review.

So far as the record shows the election on the bond issue proposed by the school board of White Earth Special School District was regular in all respects. The notice of election contained all of the information relative to the purpose of the bond issue. It was posted and published as provided by law. The plaintiffs permitted the election to be held without protest. A comparatively large number of electors voted at the election, and it would be unjust to disfranchise them upon the showing made by the plaintiffs after the election had been held.

The fact that the proposed bond issue was not submitted to a board of budget review in no way affected the free and intelligent exercise by the electors of the district of their right to vote. There was no ambiguity in the question submitted. There is no provision in the statute that failure to submit a proposed bond issue to a board of budget review would render an election thereon illegal. Since the plaintiffs did not bring their action until after the election had been held, the provision of section 40–4106, NDRC 1943, requiring bond issues to be submitted to a board of budget review for approval or rejection is held to be directory rather than mandatory, and the failure of the directors to comply therewith did not invalidate the election challenged by the plaintiffs.

The judgment of the district court is affirmed.

BURKE, C. J., and MORRIS, JOHNSON and GRIMSON, JJ., concur.