**GREAT NORTHERN RAILWAY COMPA-
NY, a corporation, Plaintiff
and Respondent,**

v.

**Amandus ESTERBY as County Treasurer of
Ward County, North Dakota, and his suc-
cessor in office, Defendant and Appellant.**

**Civ. No. 8621.**

Supreme Court of North Dakota.

Sept. 21, 1970.

Bruce M. Van Sickle, Special Asst. State's Atty., Minot, for defendant and appellant.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for plaintiff and respondent.

ERICKSTAD, Judge.

Mr. Esterby, the county treasurer of Ward County, appeals from a judgment of the district court entered on the 25th of November, 1969, refunding $1831.66 in taxes to Great Northern Railway Company. Trial de novo is demanded.

The judgment arises out of an action brought by the railway to recover taxes paid pursuant to the provisions of Section 57–20–20, N.D.C.C., which taxes were assessed and levied in 1967 in the United Public School District No. 7 and paid under protest to the county treasurer in 1968.

On July 7, 1967, the school district held a special election at which the following ballot was submitted to the voters:

### OFFICIAL BALLOT

United Public School District No. 7

July 7, 1967

#### SPECIAL ELECTION—TO VOTE INCREASE IN TAX LEVY

Shall United School District No. 7 levy taxes for the years 1967–68–69–70–71 which shall exceed the legal limit by 50 percent, so that the taxes levied, for this current year, instead of being $59,810.00 Dollars, which is the limit authorized by law, shall be $75,316.80 Dollars?

☐ For increasing the limit of indebtedness

☐ Against increasing the limit of indebtedness

(Place an X in the appropriate box.)

At that election the negative votes prevailed.

Sixty-two days later the school district held another election at which the following ballot was submitted to the voters:

### OFFICIAL BALLOT

United Public School District No. 7

September 28, 1967

#### SPECIAL ELECTION—TO VOTE INCREASE IN TAX LEVY

Shall United Public School District No. 7 levy taxes for the years 1967–68–69–70–71 which shall exceed the legal limit by 50 per cent, so that taxes levied, for this current year, instead of being $59,810.00 dollars which is the limit authorized by law, shall be $75,316.80 dollars?

☐ YES—For increasing the legal limit

☐ NO—Against increasing the legal limit

(Place an X in the appropriate box.)

In this election the affirmative votes prevailed. After the second election the school district levied an additional 6.67 mills, and the application of that millage to the railway property produced $1831.66 in taxes, which is the amount the railway protested in paying and is the amount the trial court ultimately awarded the railway in judgment.

The railway contends that the levy is illegal because the second election is illegal, and that the second election is illegal because it was held within six months of the first election, in violation of Section 105 of Chapter 158 of the 1967 Session Laws, which reads:

> Certain Questions Not To Be Voted Upon For Six Months.) Whenever at any election a bond issue, mill levy question, or question of reorganizing a school district, has failed to receive the required number of votes for approval by the electors, the matter shall not again be submitted to a vote until a period of at least six months shall have expired.

N.D.S.L.1967, Ch. 158, § 105.

In ruling in favor of the railway the trial court said:

> * * * The distinction between "exceeding the legal limit," "increasing the legal limit," and "increasing the limit of indebtedness" is a subtlety that would be unnoticed and unknown by voters, particularly when preceded by the correct title and the concise question on the ballot.

With this observation we cannot agree. We take judicial notice of the fact that in numerous elections involving two issues, such as whether a certain mill levy should be approved or whether the limit of indebtedness should be increased, the electors have in some instances approved a mill levy and disapproved the increase in the limit of indebtedness; or, vice versa, they have approved the increase in the limit of indebtedness and have disapproved the mill levy.

█ The treasurer asserts that the purpose of Section 16–01–15, N.D.C.C., is to protect the electorate from unwanted, repetitious elections on the same issues and that because of the confusion in the July 7 ballot created by the reference in the title and in the question to increasing the mill levy and the reference in the body of the ballot, across from the place where the ballot was to be marked, to increasing the limit of indebtedness, the first election cannot be said to have involved the same issue as that involved in the second election. With that position we agree.

█ The treasurer asserts another reason why the second election should be upheld and that is that since the petitioner took no action to prevent the second election, the provision requiring the six-month interim between elections should be treated as merely directory and not mandatory. In support of this reasoning he refers us to the following:

> "We believe the general rule with respect to elections is as stated in Jones v. State [ex rel. Wilson], 153 Ind. 440, 55 N.E. 229, 233:
>
> "'All provisions of the election law are mandatory, if enforcement is sought before election in a direct proceeding for that purpose; but after election all should be held directory only, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote or to the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.' * * *" City of Fargo v. Sathre, 76 N.D. 341, 36 N.W.2d 39, 47 and 48.

Kiner v. Well, 71 N.W.2d 743, 750 (N.D. 1955).

It is the treasurer's position that the failure to wait six months between elections did not obstruct the free and intelligent

casting of the vote or the ascertainment of the result, and did not affect an essential element of the election. It is to be noted further that the statute contains no express provision that its non-observance would void any election held within the six-month period.

The treasurer also refers us to the case of Nordby v. Dolan, 78 N.W.2d 689 (N.D. 1956). It is interesting that the railway refers us to the same case in support of its position that the negative vote of the first election should stand and Section 16-01-15, N.D.C.C., should be applied so that the second election must be found to be void. Basically, *Nordby* quotes with approval and applies the general rule which was applied in *Kiner*.

The railway refers us to the decision of State ex inf. Rice ex rel. Allman v. Hawk, 360 Mo. 490, 228 S.W.2d 785. (1950), in support of its position that any election held within six months of the first election is prohibited by the statute, which must be treated as mandatory.

We have studied that opinion and believe that it may be distinguished on its facts. First, the second election in that case was participated in by only a fraction of the electors of the district, for the reason that the second election had been called, cancelled, and then held; and, second, the issues at both elections involved annexation of the school district, there being no contention that there was confusion over the issue in the first election.

 Because of the importance to the preservation of a democracy, statutes tending to limit the citizen in the exercise of his right of suffrage should be construed liberally in his favor.

> \* \* \* statutes tending to limit the citizen in the exercise of the right of suffrage are construed liberally in his favor and the courts are loath to disfranchise voters who are wholly innocent of wrongdoing. .

26 Am.Jur.2d Elections § 225 at 56 (1966).

For the reasons stated in this opinion we conclude that the second election in the instant case was lawful and accordingly the judgment of the trial court is reversed.

TEIGEN, C. J., and STRUTZ, PAULSON, and KNUDSON, JJ., concur.